HAROLD F. SEYMOUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52349.   Promulgated December 21, 1932.

*W. H. Annat, Esq.*, for the petitioner.
*Dean Kimball, Esq.*, and *E. C. Adams, Esq.*, for the respondent.

### OPINION.

VAN FOSSAN: This proceeding was brought to redetermine deficiencies in the income tax of the petitioner for the years 1927 and 1928 in the amounts of $647.90 and $1,058.45, respectively.

The petitioner alleges that the respondent erred in disallowing deductions for losses sustained by the petitioner on two sales each of 500 shares of the common stock of the Columbian Hardware Company made on December 30, 1927, and December 27, 1928, respectively.

In 1927 the petitioner was president and owner of 2,800 shares of the common stock of the Columbian Hardware Company out of an outstanding issue of 5,000 shares. On December 30, 1927, the petitioner purported to make a sale of 500 shares of such stock for $50, less brokerage fee, to A. F. Munhall, treasurer of a company of which the petitioner was vice president. The petitioner and Munhall, occupying offices in close proximity to each other, came into daily contact and regularly discussed business matters with each other. Munhall had known the petitioner for twelve years and was familiar with the books of the Columbian Hardware Company. He took the petitioner's acknowledgment to his income tax returns for the years 1927 and 1928. On April 6, 1928, the petitioner repurchased the same 500 shares of stock from Munhall for $50.

On December 27, 1928, the petitioner again purported to make a sale of 500 shares of stock of the Columbian Hardware Company to A. F. Munhall for $50 and repurchased the same 500 shares in April, 1929, at the same price. In both transactions where petitioner transferred the stock to Munhall the parties negotiated the deals between themselves and then, at the suggestion of petitioner, put the

matter through a broker's office. Petitioner testified that since the sale was for tax purposes, he thought " it was a better transaction if it was a matter of record with the broker." The retransfers from Munhall were not put through a broker's office.

Both purported sales were for the accommodation of the petitioner and were admittedly made for the purpose of establishing tax losses. In each year the sale of 500 shares of stock was calculated to be sufficient to wipe out his income for such year. No other transactions involving stock of the Columbian Hardware Company were negotiated by the petitioner or Munhall during the years 1927, 1928 and 1929. As to the 1927 transaction, Munhall testified that he did not particularly want the stock, but took it as a gamble. He further testified that the stock was not a good investment. In April, 1928, Munhall asked the petitioner to repurchase the stock. In April, 1929, he was asked by the petitioner to resell it. He stated that he did not care whether he held it or sold it.

No evidence was presented as to the value of the assets of the Columbian Hardware Company, but the balance sheet of the company for December 31, 1927, showed a deficit of $164,092.94 plus a personal indebtedness due petitioner of $141,870. The condition of the company became worse in 1928 and on February 28, 1929, the deficiency amounted to $183,260.99 plus the same amount of personal indebtedness.

The case at bar involves the sole question of the bona fides of the stock transactions above set forth. The facts show clearly that the petitioner and Munhall were close business associates and that Munhall occupied a position rather subordinate to that of the petitioner. The alleged sales in both years were made for the admitted purpose of extinguishing the petitioner's income tax liability for those years. The consideration in each of the four transactions, the sales of December 30, 1927, and December 27, 1928, and the resales of April 6, 1928, and April, 1929, was identical—$50. Under such circumstances we must scrutinize with special care the conditions surrounding the ostensible sale of stock. *James S. McCandless*, 5 B. T. A. 1; *J. R. Young*, 6 B. T. A. 656; *Albert W. Finlay*, 17 B. T. A. 828; *Mrs. Niels (Mellie) Esperson, Executrix*, 13 B. T. A. 596.

In *Harold B. Clark*, 2 B. T. A. 555, we stated:

The payment of a price and the delivery of certificates do not constitute the sole requisite of a valid sale. The parties must make a bona fide transfer as persons dealing at arm's length would do—the seller for the purpose of absolutely getting rid of the stock and the buyer for the purpose of absolutely acquiring it as his own without any condition covering its later return to the seller. Receiving a credit for the price and the mere indicia of ownership, without the mutual element of intent on both sides to complete an absolute sale, can not constitute a basis for a deduction for loss under the provisions of the tax law. A loss to be deductible must be a reality.

Though the Board has approved deductions for losses where the evidence was not decidedly more favorable to petitioner than that surrounding the first purported sale, we can recall no case in which approval has been given where the same parties went through almost the identical process in the next year. To approve a single instance requires the resolving of many doubts in favor of the petitioner, but to permit a recurrence of the same procedure in the next year under the circumstances here present overtaxes our credulity. Despite the statements of the parties to the transactions that they were outright sales, we are not convinced that such sales were free and genuine. In our judgment they were lacking in bona fides.

If the transaction of 1927–1928 stood alone the deduction might conceivably have been allowed, but the repetition thereof for the years 1928–1929 in precise parallelism goes beyond mere coincidence. It casts such doubt on the good faith of petitioner in both years as to make it impossible for us to approve the purported sales. The evidence and the inferences reasonably to be drawn therefrom lean too strongly against petitioner to permit us to approve the deductions.

Reviewed by the Board.

*Decision will be entered for the respondent.*