*Decision will be entered for the respondent.*

ALCOMA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60700. Promulgated August 29, 1933.

*H. N. Taylor, Esq.*, and *William Dickinson Hart, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

#### OPINION.

GOODRICH: Respondent has determined a deficiency in income tax for 1929 of $66,954.06, which arises from his disallowance of the deduction of a loss of $608,673.33 claimed by petitioner upon the sale in that year of its stock in the Bayshore Co., a corporation owning large tracts of real estate in Florida which it had attempted to develop and sell. The facts are not in dispute; it is agreed that the cost basis of the Bayshore stock, consisting of 20,535 shares of common and 9,232 shares of preferred, acquired by petitioner in a reorganization in 1925, was $609,173.33 and the selling price $500, and it is conceded that the sale was made for the purpose of registering a loss upon a depreciated investment which might be used to offset income in reduction of taxes. Petitioner disposed of the stock through open and regular business channels. The sale was made in December 1929, at one of the weekly public auctions conducted by the brokerage concern of Adrian H. Muller & Co. in New York City, preceding which the stock had been advertised for sale, along with other securities, in a list published in at least two newspapers. It was also included in the printed catalogue of securities to be sold, distributed to persons attending the auction. At the auction the stock was bid in for the account of August Heckscher by his secretary, who had been sent to attend the auction under instructions to bid for the stock not in excess of $1,000. Heckscher was one of petitioner's directors and owned about 49 percent of its outstanding stock. Following the sale, the certificates representing the Bayshore stock were delivered to the brokers and by them to the corporation, which reissued the stock to Heckscher, by whom it was

still owned and held at the time of this trial. The money in payment of the purchase price of the stock was likewise passed through the brokers. At the time of the sale the Bayshore stock was not entirely worthless, but the value of the company's assets had depreciated so tremendously following the collapse of the Florida real estate boom and its prospects for future profitable operations had so changed that the stock had little more than a speculative value.

The controlling issue here is as to the bona fides of the sale of the stock by petitioner to Heckscher through the medium of the brokerage firm at its public auction. Respondent concedes that ostensibly the sale was a·bona fide transaction, having been conducted openly and aboveboard, through regular business channels, but rests his determination on the fact that the purchaser was petitioner's director and principal individual stockholder. We fully recognize that transactions between a corporation and its directors or stockholders, or between parties otherwise closely related, by community of interest, offer an opportunity for collusive action, often resulting in tax evasion, and therefore that the circumstances surrounding such transactions must be closely scrutinized. *Harold B. Clark*, 2 B.T.A. 555; *M. I. Stewart & Co.*, 2 B.T.A. 737; *Harold F. Seymour*, 27 B.T.A. 403; *Oscar F. C. Kunau et al., Trustees*, 27 B.T.A. 509. We conclude, after a careful examination of this record, that the sale here involved was bona fide in fact as well as in form. The testimony is clear, uncontradicted and convincing that petitioner intended to and did part with its property, finally and completely; that there were no restrictions upon the order of sale; that there was no arrangement as to a repurchase, reacquisition, or a holding of title for the benefit of petitioner, nor any attempt on its part to retain a vestige of control over or ownership in the stock. Heckscher's instructions to his secretary were positive—he was to bid up to $1,000 for the stock, and no more. Had there been an offer in excess of that amount, that bidder would have acquired the stock. The stock was transferred after the sale to the purchaser and has since remained in his possession. Upon the record before us, the transaction was valid and complete and we see nothing to indicate a lack of bona fides in the sale.

Since respondent concedes it, we need not discuss the proposition that the vendor's motive, namely the realization of a loss which would serve to reduce its tax liability, does not affect the validity of the sale, or that the existence of that motive does not make a sustained loss any the less recognizable. *Nace Realty Co.*, 28 B.T.A. 467; *Pennsylvania Co. for Insurances, etc.*, 2 B.T.A. 48, and cases there cited.

*Judgment will be entered for the petitioner.*