RAND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. R. RAND, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62226, 63111. Promulgated November 28, 1933.

*Leland W. Scott, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, and *J. A. Lyons, Esq.*, for the respondent.

OPINION.

GOODRICH: Again we are called upon to determine whether transactions disposing of depreciated securities constituted valid and bona fide sales so that the losses registered may serve to reduce income and thus avoid tax. The primary facts are not in dispute; it is only

the ultimate finding respecting the character of the transactions which is in controversy. Upon motion, the proceedings were consolidated for hearing.

In December 1929 the Rand Co., a closely held "family" corporation, having its principal office in Minneapolis, Minnesota, where it was engaged in buying, selling, and holding securities and other properties, owned 1,000 shares of stock of Harrison's Orange Huts, Inc., acquired at a cost of $29,020. R. R. Rand, Jr., a resident of Hennepin County, Minnesota, and president of the Rand Co., then owned 3,450 shares of the same stock, acquired at a cost of $85,722.19. At that time the Orange Huts concern was in financial difficulty, as petitioners learned upon investigation. An involuntary petition in bankruptcy was filed by its creditors during the month; it appeared that its liabilities were substantially in excess of its assets; and its stock, listed on the Chicago curb, had much declined in price. Although 4,325 shares were traded on the Chicago curb in the last half of December at prices ranging from 25 cents a share, low, to $1.75 a share, high, petitioners' brokers informed them that their holdings could not be marketed there and, near the end of the month, petitioners unsuccessfully sought to sell the stock in the Twin City markets. On the last day of the month both petitioners ostensibly sold their Orange Huts shares to A. S. Trux, who was employed upon salary by the Rand Co. as secretary-treasurer. The certificates representing the shares were assigned to Trux, reissued in his name and delivered into his possession. The transactions were recorded in the accounts of both petitioners. For its lot of 1,000 shares, the Rand Co. received $5, and claimed a loss of $29,015. For his 3,450 shares, Rand received $10, and claimed a loss of $85,712.19. Respondent has disallowed the losses and that action gives rise to the deficiencies in income tax for 1929—$17,929.45 against Rand, and $3,191.65 against his company.

Thereafter, the Orange Hut business improved. The bankruptcy proceedings were terminated, a reorganization of the company was planned, and its stock became active on the market and advanced in price until at some time in May 1930 it reached about $6 a share. Petitioners then reacquired the stock from Trux at the same price he had paid.

We sustain respondent's determinations, for we are of the opinion that these transfers were not arm's-length transactions—valid sales, whereby the sellers parted with all rights in the stock and the buyer acquired legal and equitable ownership therein—but effected merely an arrangement for the accommodation of petitioners. In the first place, we are not convinced that the stock could not have been disposed of upon the open market at prices substantially in excess of

the nominal sum at which Trux took it over. Rand testified that his brokers were unable to sell the stock owned by petitioners, yet the market record shows that during the last two weeks of December nearly that many shares changed hands and the proof does not satisfy us that petitioners' stock, or a part of it, could not have been sold also. Both Rand and Trux testified that there was no arrangement or understanding respecting a reacquisition of the shares by petitioners. That may be true as to any expressed agreement, and perhaps Rand's further testimony indicates that the sellers thought they were definitely parting with their property. But the record indicates to us that Trux did not regard himself as complete and unrestricted owner of the property—certainly not in the event the stock recovered in value. For instance, after Rand testified that the reason for selling the stock was that " we wanted to take a loss on the stock * * * and accordingly the sale was made to Mr. Trux," Trux testified concerning his reason for buying:

Q. Did you buy the stock as an investment?
A. No, sir.
Q. What was your reason for buying it?
A. Just buying it because it was a matter of having him get his loss back; he couldn't sell it any place else, so I accommodated the gentleman.

And concerning the reacquisition of the stock by petitioners, Trux testified as follows:

Q. How did you happen to sell to Mr. Rand this * * * stock * * * for $10.00 when it had a market value on that date of $6.00 a share?
A. Well, I didn't think I was entitled to make a profit out of something that I thought was worthless when I bought it.
Q. Who set the price on this stock when Mr. Rand came to you to repurchase it? * * * Did he ask you what you would take for it?
A. I don't know as he did. I think I volunteered to give it back to him for just what I paid for it. * * * I think I went to his office and told him that this stock had proven to be of value and I thought he ought to have it back. * * * I am positive I volunteered to give it to him, and the price was just what I paid for it.

In other words, Trux, as an employee, was willing to spend $15 of his own money in an accommodation purchase so that his employer might register a useful loss, but when the stock he purported to purchase advanced in price, he felt that it and the gain belonged to his employer, not to himself. Perhaps such an attitude was commendably loyal, but it forestalled Trux from taking full and complete ownership of the shares and prevented these transactions from being complete and effective sales, as that term is known in the law. *Harold B. Clark*, 2 B.T.A. 555; *Stewart & Co.*, 2 B.T.A. 737; *Harold F. Seymour*, 27 B.T.A. 403; cf. *Oscar F. C. Kunau et al., Trustees*, 27 B.T.A. 509; *Andrew J. Peters*, 28 B.T.A. 976.

*Judgment will be entered for the respondent.*