DWIGHT C. WHEELER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71338. Promulgated July 9, 1935.

J. *Gilmer Korner, Jr., Esq.*, for the petitioner.
*De Witt M. Evans, Esq., James K. Polk, Jr., Esq.*, and *John M. Morawski, Esq.*, for the respondent.

OPINION.

SMITH: In this proceeding the petitioner claims the deduction of a loss of $99,210.25 on the sale on December 24, 1930, of 3,350 United Founders shares. He concedes that no deduction is allowable in respect of the 1,000 shares sold on December 30, 1930, for the reason that he repurchased a like number of the same shares within the statutory 30-day period.

The respondent contends that the purported sale of the shares in question was not a bona fide sale and did not result in a deductible loss. The pertinent provisions of the statute are sections 112 (a) and 118 of the Revenue Act of 1928, which read as follows:

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

SEC. 118. LOSS ON SALE OF STOCK OR SECURITIES.

In the case of any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition, no deduction for the loss shall be allowed under section 23 (e) (2) of this title; nor shall such deduction be allowed under section 23 (f) unless the claim is made by a corporation, a dealer in stocks or securities, and with respect to a transaction made in the ordinary course of its business. If such acquisition or the contract or option to acquire is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed.

The respondent questions the bona fides of the sale of the 3,350 United Founders shares on December 24, 1930, on the ground that there was no intention on the part of the petitioner to make a final conveyance of the shares and no intention on the part of Bull & Co. to purchase the shares and that the purported sale was a mere subterfuge by which the petitioner sought to establish a loss for income tax purposes. The petitioner admits that the sale was made for the purpose of establishing an income tax loss, but strenuously denies that the sale was not in every way bona fide.

As the facts above set forth show, and as the respondent admits, there was a strict compliance on the part of both the petitioner and Bull & Co. with the requisite formalities of a sale of the 3,350 shares of United Founders stock on December 24, 1930. According to the book entries, the sale was regularly carried out in the manner and form of many other transactions which Bull & Co. handled for the petitioner and other customers. *Prima facie*, there was a valid sale by the petitioner of the 3,350 United Founders shares on December 24, 1930.

In his brief the respondent states:

\* \* \* The petitioner reacquired the 3,350 shares of United Founders stock on January 26, 1931, without the expenditure of any monies other than brokerage fees and transfer tax. It is the circumstances and collateral facts occuring between the time of the purported sale and the reacquisition and other collateral facts associated and connected with the transaction that give rise to the inference, conclusions and determination that there was in fact no actual sale.

The respondent further submits:

\* \* \* It is believed that this cumbersome roundabout method of selling and reacquiring the United Founders stock, together with the fictions employed to make the transaction appear regular on its face, are indicative that at the time of the purported sale on December 24, 1930, there was an understanding—tacit or otherwise—that the petitioner would reacquire the stock without an outlay of money except the commissions and transfer tax, and no sale took place. \* \* \*

The only transaction with which we are directly concerned in this proceeding is the sale of the 3,350 shares of United Founders stock on December 24, 1930. The petitioner is not claiming any loss on the sale of the I. T. A. shares. Whether the purchase of the I. T. A. shares in 1930 or their sale in 1931 were fictitious transactions is not material in this proceeding except as to the bearing that those transactions may have on the sale of the United Founders shares. The same might be said of the petitioner's transactions in United Founders shares in 1929, which year is not before us, and the purchase and sale by other individuals of United Founders and I. T. A. shares in 1930.

Under the taxing statute the petitioner is entitled to deduct from his gross income of 1930 the loss sustained upon the sale of 3,350 shares of United Founders stock, provided the sale was actually made and provided (1) he did not acquire within a period of 30 days from the date of sale " substantially identical property " or (2) he did not within such 30-day period enter " into a contract or option to acquire substantially identical property."

The respondent seems to lay stress upon the fact that the shares of United Founders stock claimed to have been sold by the petitioner were acquired by Bull & Co. and not sold by Bull & Co. to

outsiders.  The evidence all goes to show that the petitioner believed that when he turned the shares over to Bull & Co., Bull & Co. would sell them to outside parties.  Bull & Co. did not sell the shares to the public, but purchased them for their own account.  We do not see that this fact is prejudicial to the claim of the petitioner that he sold the shares.  He turned them over to Bull & Co. for sale and, so far as the petitioner was concerned, it was immaterial whether Bull & Co. purchased them for its own account or for the account of others.  The petitioner sold all of his right, title, and interest in and to the shares when he turned them over to Bull & Co. and received credit on the books of Bull & Co. for the selling price.  So far as the record indicates Bull & Co. were not brokers in the transaction.  They, as private bankers, had the right to acquire the shares for themselves.

The acquisition by the petitioner of a like number of shares of I. T. A. stock was not the acquisition by the petitioner " of substantially identical property."  I. T. A. was an investment trust.  It was a small concern in comparison with United Founders Corporation.  There were transactions in its shares.  The fact that the market price of I. T. A. shares generally followed the market price of United Founders shares is immaterial.  As a stockholder of I. T. A. the petitioner held substantially different property from that which he held when he owned United Founders Stock.  The I. T. A. shares might have become valueless in the hands of the petitioner without having substantially affected the price of the United Founders shares.  Whether or not Bull & Co. was in a position to deliver I. T. A. certificates to the petitioner had he demanded them is beside the question, although the evidence shows that Bull & Co. had an arrangement whereby they could at any time have secured I. T. A. certificates to deliver to the petitioner had he made a demand upon Bull & Co. for their delivery.

The respondent contends that there must have been an understanding between Bull & Co. and the petitioner that the petitioner would repurchase the United Founders shares after the expiration of 30 days from the date of sale.  Both the petitioner and officers of Bull & Co. testified unequivocally that there was no agreement, or option, or understanding entered into between Bull & Co., or any of the representatives of that concern, whereby the petitioner would be allowed to acquire United Founders shares in exchange for his I. T. A. shares.  The circumstances under which the transactions were made and the fact that other clients of Bull & Co. established income tax losses for 1930 in the same manner in which the petitioner established his loss on the sale of United Founders shares do not persuade us that there was any agreement, option, or understanding

# 916

between the petitioner and Bull & Co. for the reacquisition of his United Founders shares. In *R. R. Rand, Jr.* v. *Helvering*, 77 Fed. (2d) 450, affirming 29 B. T. A. 467, the court held that this Board was not compelled blindly to accept testimony of the taxpayers that there was no understanding as to repurchase at the time of sales in 1929; that the taxpayers did not sustain the burden resting on them (of establishing that there was no understanding) by mere testimony that there was no understanding, where the facts showed that the officer to whom the sales were made bought the stock for $15, and when he resold for the same amount, it had a value of $6,700. Cf. *Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446, affirming 30 B. T. A. 659.

The facts here are not parallel to those which obtained in the above cited cases. Here the petitioner sold his United Founders shares at the market price. The shares were listed on the Boston Stock Exchange and on the New York Curb. When the petitioner sold his I. T. A. shares in 1931 he realized a profit in excess of $2 per share upon that sale and accounted for the profit in his income tax return. When he reacquired 3,350 shares of United Founders stock he paid a price for them in excess of the price at which he had sold them. Clearly, the fact that the petitioner purchased a like number of shares of United Founders stock in 1931 as he had sold in 1930, such purchase having been made more than 30 days after the sale of the shares, is no bar to the petitioner claiming the deduction from his gross income of 1930 of the loss which he sustained upon the sale in 1930.

We reach the conclusion that the petitioner made a bona fide sale of his 3,350 United Founders shares on December 24, 1930, and that the loss represented by the difference between the cost to him of those shares and the selling price is a legal deduction from the petitioner's gross income of 1930.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

Black, dissenting: For substantially the same reasons as were given by the Board in *Harold F. Seymour*, 27 B. T. A. 403, I think the decision in the instant case should be one upholding the determination of the Commissioner that the sales of stock in question were not bona fide and did not result in deductible losses. I therefore dissent from the majority opinion.

Seawell agrees with this dissent.