H. O. WOOD, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. O. M. SPRAGUE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. F. B. MITCHELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. T. TERRY, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIS D. WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65832–65835, 69844. Promulgated December 31, 1935.

*Howard O. Wood, Esq.*, for the petitioners.
*R. W. Wilson, Esq.*, for the respondent.

OPINION.

MURDOCK: The following table shows the deficiencies in income tax for the year 1929 as determined by the Commissioner, the names of the petitioners, and the docket numbers:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| H. O. Wood, Jr | 65832 | $1,766.33 |
| C. O. M. Sprague | 65833 | 4,443.03 |
| J. F. B. Mitchell | 65834 | 8,648.87 |
| John T. Terry, Jr | 65835 | 1,277.92 |
| Willis D. Wood | 69844 | 15,022.28 |

There are but two questions for decision and they are common to all of the proceedings. A third issue, raised only in the petition of Willis D. Wood, has been settled by agreement of the parties to abide by the decision of the court in *Rogers* v. *Strong*, 72 Fed. (2d) 455; certiorari denied, 293 U. S. 621.

The parties have attempted to state the issues as a part of a stipulation of facts, but the real issues in the case admit of more accurate and clearer statements than those made by the parties.

The first issue can be best understood by a brief statement of some of the facts. A partnership, of which the petitioners were members, owned a number of securities which it transferred to a new partnership at the then market value of the securities. The total cost of those securities to the old partnership exceeded the total market values at the time of the transfer by $132,941.24. The old partnership at the time of the transfer had accumulated earnings amounting to $467,982.15. The question for decision is whether, in computing the petitioners' distributive shares of the net income of the partnership, a loss from the disposition of the securities should be deducted.

The case was originally submitted for decision upon a certain stipulation of facts. The Board considered that stipulation, but came to the conclusion that it was an unsatisfactory basis for a decision of the case. The Board, therefore, returned that stipulation to the parties and directed them to prepare a proper stipulation of facts or otherwise move in respect to the proceeding. The parties then submitted another stipulation of facts, which they say states " all the facts necessary to present the triable issues herein involved." The stipulation, in so far as it pertains to the first issue, is as follows:

1. Previous to the first day of January, 1929 and up to and including the 30th day of June, 1929, Willis D. Wood, Howard O. Wood, Jr., C. O. M. Sprague, J. F. B. Mitchell and J. T. Terry, Jr., all of the petitioners herein, were members of a co-partnership known as Wood, Low & Company, with offices at 63 Wall Street, New York City. The business of Wood, Low & Company consisted chiefly of the purchase and sale of securities for the account of others, and for their own account, on the New York Stock Exchange, New York Curb, " Over the Counter " and of transactions with other dealers, institutions and investors.

2. On June 30, 1929, the then partnership of Wood, Low & Company, hereinafter referred to as the Old Firm, transferred all its assets as a going concern to a different partnership which continued the same business under the same firm name of Wood, Low & Company, hereinafter referred to as the New Firm, for the second six months of the year. The New Firm consisted of all the petitioners herein and Carroll Dunham, III.

The interests in profits and losses of the members of Wood, Low & Company, Old Firm, up to and including June 30, 1929 were as follows:

Members of Partnership:

| | |
|---|---|
| W. D. Wood | 36. 63% |
| J. F. B. Mitchell | 22. 77 |
| C. O. M. Sprague | 14. 85 |
| John T. Terry, Jr | 10. 89 |
| H. O. Wood, Jr | 11. 88 |
| Total of above items | 97. 02% |
| Interest of employees in profits | 2. 98 |
| Total | 100. 00% |

The interests in profits and losses of the members of Wood, Low & Company, New Firm, from July 1 to December 31, 1929, inclusive, were as follows:

Members of Partnership:

| | |
|---|---|
| W. D. Wood | 32. 8375% |
| J. F. B. Mitchell | 20. 35 |
| C. O. M. Sprague | 13. 4125 |
| John T. Terry, Jr | 10. 175 |
| H. O. Wood, Jr | 11. 1 |
| Carroll Dunham, III | 4. 625 |
| Total of above items | 92. 5000% |
| Interest of employees in profits | 7. 5 |
| Total | 100. 0000% |

3. Annexed hereto and made a part hereof marked "Taxpayers' Exhibit No. 10" is a Summary Statement of the Old Firm balance as at June 30, 1929 and the New Firm balance as at July 1, 1929.

This Summary Statement shows assets of the Old Firm as at June 30, 1929 of a total of $25,309,888.50 and liabilities totalling $23,176,906.42; the difference of $2,132,982.15 includes partners' capital account balances of $1,665,000.00 and an accumulated balance in the profit and loss account of $467,982.15; against this balance there was charged $132,941.24, which represented the loss sustained on the disposition of the Old Firm's securities and the balance of $335,040.91 was distributed to the personal accounts of the partners.

4. All of the Petitioners herein maintained personal checking accounts with and as customers of the Old Firm and the New Firm and it was these accounts which were credited with the distributable profits of the Old Firm of $335,040.91 and charged with the contributions to capital of $215,000.00.

The following table sets forth the changes in partners' personal balance which were made at that time:

| Name of Partner | Balance in Account June 30, 1929, prior to Profit & Loss Division and Additional Capital Contributions | Personal Account Credited Share of Profit & Loss Distribution | Personal Account Charged Additional Contribution to Capital New Firm | Balance July 1, 1929 after Old Firm Profit & Loss Division and Capital Contribution |
|---|---|---|---|---|
| W. D. Wood | Dr. $315,436.82 | $122,725.50 | $56,000.00 | Dr. $248,711.32 |
| J. F. B. Mitchell | Cr. 3,267.34 | 76,288.81 | 35,000.00 | Cr. 44,556.15 |
| C. O. M. Sprague | Dr. 13,967.90 | 49,753.57 | . 22,000.00 | Cr. 13,785.67 |
| J. T. Terry, Jr | Dr. 100,774.11 | 36,485.96 | 17,000.00 | Dr. 81,288.15 |
| H. O. Wood, Jr | Cr. 72,818.87 | 39,802.86 | 35,000.00 | Cr. 77,621.73 |
| Employees' Participation | | 9,984.21 | | |
| O. Dunham, III | Cr. 40,762.14 | No share | 50,000.00 | Dr. 9,237.86 |
| | | $335,040.91 | $215,000.00 | |

In each of the above cases where a partner's personal account is a debit account, such debit was fully secured by deposit as collateral of the personal securities of that partner.

The additional contributions of capital, amounting to $215,000.00, as shown above, were reflected in the individual capital accounts of the Old and the New Firms as follows:

| Name of Partner | Capital in Old Firm | Additional Contribution | Capital in New Firm |
|---|---|---|---|
| W. D. Wood | $632,000.00 | $56,000.00 | $688,000.00 |
| J. F. B. Mitchell | 420,000.00 | 35,000.00 | 455,000.00 |
| C. O. M. Sprague | 113,000.00 | 22,000.00 | 135,000.00 |
| J. T. Terry, Jr | 285,000.00 | 17,000.00 | 302,000.00 |
| H. O. Wood, Jr | 215,000.00 | 35,000.00 | 250,000.00 |
| C. Dunham III | (1) | 50,000.00 | 50,000.00 |
| TOTALS | $1,665,000.00 | $215,000.00 | $1,880,000.00 |

1 Not a Partner.

5. The New Firm acquired the assets and assumed the liabilities of the Old Firm and the New Firm started business July 1, 1929 with assets amounting to $25,086,005.83, liabilities of $23,206,005.83 and capital of $1,880,000.00  *  *  *.

6. Annexed hereto and made a part hereof marked " Taxpayers' Exhibit No. 9 " is a Schedule of the securities owned by the Old Firm showing a taxable cost to the Old Firm of $3,339,907.04. These securities were acquired by the New Firm effective July 1, 1929, on the basis of the market values as at the close of business June 30, 1929. The total of such securities at market value June 30, 1929 was $3,206,965.80.

Upon acquisition of these securities of the Old Firm by the New Firm at market values at the close of business June 30, 1929 there was a loss of $132,941.24, which amount was duly reflected in the profit and loss account of the Old Firm.

7. These securities set forth in " Taxpayers' Exhibit No. 9 " from and after the beginning of business on July 1, 1929 were wholly the property of the New Firm; there was no distribution in kind to the partners of the Old Firm and the assets of the Old Firm, including securities, were acquired by the New Firm for specific money values as set forth in the Summary Statement marked " Taxpayers' Exhibit No. 10 ".

8. The book value of the assets of Wood, Low & Company, Old Firm, as shown in Paragraph 3 on June 30, 1929, prior to acquisition by the New Firm, were $25,309,888.57, and the liabilities were $23,176,906.42. The total assets of the Old Firm were divided as follows:

| | |
|---|---|
| Assets other than Securities | $21,969,981.53 |
| Securities Owned (at cost) | 3,339,907.04 |
| | |
| Total | 25,309,888.57 |

All assets, other than securities, were valued and acquired by the New Firm at book value, that is, $21,969,981.53. The securities owned were acquired by the New Firm at market value June 30, 1929, that is, $3,206,965.80, making a total of $25,176,947.33, which the New Firm owed to the Old Firm in acquiring the assets. At the same time, the New Firm assumed the liabilities of the Old Firm at book value, that is, $23,176,906.42. After deducting such assumed liabilities from the total payable on account of assets acquired, there remained due the Old Firm a balance of $2,000,040.91. This sum, as applied to the partners of the Old Firm, represented—

| | |
|---|---|
| Capital Released | $1,665,000.00 |
| Undistributed Profit & Loss | 335,040.91 |
| | |
| Total | 2,000,040.91 |

As described above, the profit and loss balance ($335,040.91) was duly distributed to the partners of the Old Firm, in accordance with their partnership interests, and represented the entire amount of profit which they received upon the closing of the Old Firm books. The capital amount of $1,665,000.00 was released from the Old Firm and returnable to the partners of the Old Firm, in accordance with their capital contributions. This amount, plus additional cash amounts, was in turn contributed by the partners as capital to the New Firm. The sums so contributed are above set forth in Paragraph 4.

The apparent differences between total assets and liabilities of the New Firm (July 1, 1929) as shown in "Taxpayers' Exhibit No. 10" and the values at which the assets and liabilities of Old Firm were acquired, are reconciled as follows:

| | Assets | Liabilities |
|---|---|---|
| Assets acquired from Old Firm and liabilities assumed, as above | $25,176,947.33 | $23,176,906.42 |
| Adjustment for distribution of Old Firm Profit & Loss balance ($335,040.91) which Old Firm partners left with New Firm as Personal balances (See paragraph 4) | —173,179.36 | +161,861.55 |
| | $25,003,767.97 | $23,338,767.97 |
| Adjustment for contribution of new capital ($215,000.) which was charged to New Firm partners' Personal accounts (See paragraph 4) | +82,237.86 | 132,762.14 |
| Total New Firm assets and Liabilities, July 1, 1929, as per Taxpayer's Exhibit No. 10 | $25,086,005.83 | $23,206,005.83 |

The books of the Old Firm and the New Firm show that the securities were acquired by the New Firm for the equivalent of cash; they were not transferred to the New Firm and credited to the accounts of the old partners as capital contributions to the New Firm, except to the extent that their value at market prices June 30, 1929 was included in the excess of total assets over total liabilities of the New Firm. The credits for additional contributions to capital of the New Firm did not include credits for any securities deposited by the partners, but represented cash from personal accounts.

10. The books of the New Firm and Old Firm do not record a physical passing of currency or cheques from the New Firm to the Old Firm; the books of the business which began on July 1, 1929 show the same net balance for firm securities as would have been shown if the New Firm had actually made payment by cash or cheque to the Old Firm for the securities on the basis of market values at June 30, 1929. The loss upon disposition of the securities by the Old Firm was the same as it would have been if cash or cheques had been paid by the New Firm for the securities which the New Firm acquired on the basis of market values as at June 30, 1929.

11. The capital account of each member of the Old Firm, as appeared on the books at the close of business on June 30, 1929, was cash capital, not securities. The capital of each member of the New Firm appearing on the books as of July 1, 1929 was the same cash capital of each partner to which was added contributions in cash made by each member of the New Firm.

\*    \*    \*    \*    \*    \*    \*

13. There was disallowed by the Commissioner as partnership losses to the Old Firm on the transfer of the aforesaid securities to the New Firm the sum of $127,704.86.

Thus it appears that the Commissioner disallowed $127,704.86 of the total amount of $132,941.24 shown as a loss. The difference is not in controversy, since the respondent makes no claim for an increase in any deficiency and the petitioners limit their claim to a deduction of $127,704.86 in computing the net income of the old partnership.

Supplement F of the Revenue Act of 1928 deals with partnerships. It provides that " individuals carrying on business in partnership shall be liable for income tax only in their individual capacity." Sec. 181. The general rule is that " there shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year." Sec. 182. The net income of the partnership is computed, for present purposes, " in the same manner and on the same basis as in the case of an individual." Sec. 183. The act, like earlier acts, is not specific in regard to many of the details involved in the method of computing partnership income. The problem of supplementing the acts has always been an unusually difficult one, due, at least in part, to the fact that they treat a partnership as an entity for some purposes, but not for other purposes. See sections 182 and 184. Furthermore, the treatment of partnerships for Federal income tax purposes is not always entirely consistent with the status of partnerships

for other purposes. Difficult questions must be considered "realistically, without being overwhelmed by concepts." *Edward B. Archbald*, 27 B. T. A. 837; 70 Fed. (2d) 720; certiorari denied, 293 U. S. 594. A comprehensive view of the entire subject of partnership income and deductions must be taken, since all questions relating to the taxation of partnerships are all more or less interrelated. Yet the field is so large that it is easy to overlook a part of it.

The Commissioner has not called attention to any long established practice relating to the point in issue. He quotes article 604 of Regulations 74[1] in full in his brief and says that it is similar to article 1603 of Regulations 69 and 65, and article 1570 of Regulations 62. However, he makes no reference to the regulations in his argument. Article 604 contains a provision that if a partnership distributes its assets in kind and not in cash, the partner realizes no gain or loss until he disposes of the property thus received in liquidation. That sentence describes a long established practice of the Bureau. Yet, the respondent not only does not invoke its application here, but has expressly stipulated that "there was no distribution in kind to the partners of the Old Firm and the assets of the Old Firm, including securities, were acquired by the New Firm for specific money values" and "they were not transferred to the New Firm and credited to the accounts of the old partners as capital contributions to the New Firm." Since it is conceded that there was no distribution in kind of the assets of the old partnership to the old partners, the petitioners' contention is in no way contrary to article 604. There is no good reason to extend the application of the quoted rule relating to distributions in kind to cases such as the present, where there has been no distribution in kind. Cf. *Helvering* v. *Walbridge*, 70 Fed. (2d) 683.

If the old firm sold the securities at a price equal to their fair market value, then it actually sustained the loss and should deduct it in computing its net income distributable to the old partners. The

---

[1] ART. 604. *Readjustment of partnership interests.*—When a partner retires from a partnership, or it is dissolved, he realizes a gain or loss measured by the difference between the price received for his interest and the cost to him of his interest in the partnership, including in such cost the amount of his share in any undistributed partnership net income earned since he became a partner on which the income tax has been paid. However, if such interest in the partnership was acquired prior to March 1, 1913, both the cost as hereinbefore provided and the value of such interest as of such date, plus the amount of his share in any undistributed partnership net income earned since February 28, 1913, on which the income tax has been paid, shall be ascertained, and the gain derived or the loss sustained shall be computed as provided in article 561. If the partnership distributes its assets in kind and not in cash, the partner realizes no gain or loss until he disposes of the property received in liquidation. Whenever a new partner is admitted to a partnership, or any existing partnership is reorganized, the facts as to such change or reorganization should be fully set forth in the next return of income, in order that the Commissioner may determine whether any gain or loss has been realized by any partner.

parties have stipulated that "upon acquisition of these securities of the Old Firm by the New Firm at market values at the close of business June 30, 1929, there was a loss of $132,941.24 which amount was duly reflected on the profit and loss account of the Old Firm." The accumulated earnings of the old firm were reduced by this amount. Thus reduced, they amounted to $335,040.91. The parties have stipulated that this latter profit and loss balance "was duly distributed to the partners of the Old Firm, in accordance with their partnership interests, and represented the entire amount of profit which they received upon the closing of the Old Firm books." They further stipulated that the capital of the old firm was released and, with the additional amounts derived from the net profits of the old firm, "was in turn contributed by the partners as capital to the New Firm." There is no mention in the stipulation of a bill of sale transferring the securities of the old firm to the new firm. However, the only fair conclusion to be drawn from the stipulation of the parties is that the securities were actually sold by the old firm to the new firm. The consideration for the transfer of the assets was the assumption by the new firm of the liabilities of the old firm and the credits given to the old partners on the books of the new firm. The parties have stipulated the total amount "which the New Firm owed to the Old Firm in acquiring the assets." Paragraph 10 of the stipulation shows the short cut which the parties to that transaction took instead of making payments back and forth in cash. The nature of the transaction would not have been different had they passed currency or checks instead of accomplishing their purpose by mere book entries. The respondent expects and is content to have the issue decided on the basis of a sale of the securities by the old firm to the new firm for cash. Even if it was not, strictly speaking, a sale, the question would remain whether it should not be treated, for income tax purposes, like a sale. The only alternative which would defeat the petitioners' contention under the Commissioner's Regulations would be to treat it as a liquidation in kind of the securities to the members of the old partnership. But that would be contrary not only to the facts but to the express stipulation of the parties. Therefore, it seems proper to treat the transaction as a sale of the securities by the old partnership.

The final net income of the partnership distributable to the partners was not $467,982.15, but was $335,040.91. The Commissioner erred in disallowing $127,704.86 as partnership losses to the old firm from the transfer of the securities to the new firm.

The respondent's position, as disclosed in the few pages of his brief, devoted to the question, is somewhat difficult to understand. He states in effect that the difference between the old and new partnerships was so slight that it should be disregarded in deciding the

case; the business continued without change in control and should be treated like a nontaxable reorganization of a corporation; the partners can not deduct a loss by selling to themselves; the petitioners' theory is unreasonable and would lead to confusion and an absurd impractical result in many cases which Congress did not intend; and, finally, "the changes here were clearly made to reduce income taxes." The attempt to draw an analogy between this case and the reorganization of a corporation fails completely. There can be no reorganization of a partnership under section 112(i), since that provision applies only to corporations. Special statutory provisions were necessary to prevent the recognition of gain or loss when one taxpayer transfers assets to another. Those special provisions do not apply in the present case. *Expressio unius est exclusio alterius.* If any inference is to be drawn from the reorganization and nonrecognition provisions of the statute, it is that the loss here should be recognized. The changes which took place may not be disregarded in deciding this case. Nor is there any reason tó believe that they were made to reduce income taxes. Although none of the old partners severed his connection with the business, nevertheless each one of them increased his capital contribution and changed the ratio in which he was to share in the profits and losses of the business. A new partner came in with a substantial investment of new funds. Furthermore, there was a real necessity for a revaluation of the assets of the business and, in fact, the new firm did not take the securities in question at their cost or book value to the old firm, but, instead, acquired them at their then fair market value. The partners of the old firm were entitled to the gains of that firm. They determined those gains and divided them in accordance with the percentages provided in their old partnership agreement. The new partner had no right to share in the gains of the old partnership, but, on the other hand, he was not required to accept, as assets of the new firm, the securities of the old firm at their book values to the old firm, since those book values were less than the market value of the securities. Consequently, the partners adopted the procedure outlined in the statement of facts. The new partnership acquired the securities at their market values and thereafter would compute its gain or loss upon that basis. *Elmer R. Wallingford,* 4 B. T. A. 634; *Edward B. Archbald, supra.* Cf. *Carroll* v. *Commissioner,* 70 Fed. (2d) 806, (which is in conflict with the *Archbald* decision in holding that an asset may have more than one basis for computing partnership income). Otherwise, the gains and losses of the old partnership would become confused and mingled with those of the new in such a way as to prevent the determination of each

partner's distributive share of the net income of the new partnership. The act requires the use of bookkeeping methods which will clearly reflect income. The new partnership was but complying with that requirement. Where, as in this case, new capital comes in, interests are changed, and old assets are taken by the new partnership at market values, which differ from the book value of those assets to the old partnership, failure to draw a sharp line between the income of the old partnership and the income of the new partnership would lead to confusion and improper taxes. There may be cases in which that line need not be drawn because of lack of evidence, because the old partnership is not dissolved, or because no assets have been transferred from the old to the new partnership in such a way as to create gain or loss and the new partner has contributed nothing but has acquired merely an interest in the old partnership. Cf. *Alpin J. Cameron*, 8 B. T. A. 120; *Henry Wilson*, 16 B. T. A. 1280; *Henry W. Healy*, 18 B. T. A. 27; *Cameron* v. *Commissioner*, 56 Fed. (2d) 1021, affirming 20 B. T. A. 305; *Lester W. Fritz*, 28 B. T. A. 408; affd., 76 Fed. (2d) 460. Since the old partnership here made a real disposition of its assets to the new partnership at a figure less than its basis for gain or loss, it must take that circumstance into account and compute its loss accordingly in order to clearly reflect its income and the income taxable to the partners.

The stipulation of facts on which the second issue is to be decided is as follows, except that the stipulation contains references to certain exhibits attached to it:

14. Certain of the securities purchased by the New Firm were later sold and re-purchased in the open market before the end of the year, 1929, the facts surrounding such sales and re-purchases being as follows:

15. On the 29th day of December, 1929, the New Firm of Wood, Low & Company owned 1334 shares of Manhattan Modified Guaranty stocks, 1166⅔ shares of which were acquired from the Old Firm at a cost of $39,666.67 and 167⅓ shares of which were purchased by the New Firm for $2,535.01, making the total cost of the said 1334 shares to the New Firm $42,201.68.

16. On the 29th day of December, 1929, the New Firm, in order to liquidate a portion of its losses, sold on the floor of the New York Stock Exchange to J. H. Oliphant & Co., also members of the New York Stock Exchange, the aforesaid 1334 shares of Manhattan Modified Guaranty stock at 30½ per share, for a total price of $40,633.64, thereby sustaining a loss of $1,568.04.

    *      *      *      *      *      *      *

17. Later, on the same day, December 29, 1929, the New Firm placed a "buy" order with and did purchase from J. H. Oliphant & Co. on the floor of the New York Stock Exchange, 1334 shares of Manhattan Modified Guaranty stock at 30⅝ per share for a total cost of $40,853.75 and on the 30th day of December, 1929, Wood, Low & Company sent its cheque for this purchase to J. H. Oliphant & Co.

In accordance with the practice between brokerage houses of delivering only the net difference in the day's purchases and sales of any given stock, there was no actual delivery of the 1334 shares of Manhattan Modified stock to J. H. Oliphant & Co., or to Wood, Low & Co., as the incoming and outgoing shares of that stock balanced.

\*  \*  \*  \*  \*  \*  \*

Wood, Low & Co. received on December 30, 1929 the cheque of J. H. Oliphant & Co. for $40,687 in payment of the purchase by it, as set forth in paragraph 16. The $53.36 difference between each cheque and the actual net price represents the Federal and State transfer stamps, paid by the seller.

\*  \*  \*  \*  \*  \*  \*

18. On the 19th day of November, 1929, the New Firm, in order to liquidate a portion of its losses, sold and delivered to the Bankers Company of New York, 126 Third Avenue Railway Adj. 5s, 1960 for $29,610.00 and 161 I. R. T. 5s, 1966 for a net $94,990.00 or a total amount of $124,600.00, thereby sustaining a loss by reason of their purchase from the Old Firm, of $26,222.50.

\*  \*  \*  \*  \*  \*  \*

19. On the 20th day of November, 1929, the New Firm placed an order with and purchased from the Bankers Company of New York 126 Third Avenue Railway Adj. 5s 1960 for $29,767.50 and 161 I. R. T. 5s, 1966 for a net $95,191.25 or a total amount of $124,958.75.

\*  \*  \*  \*  \*  \*  \*

The petitioners claim the right to deduct the " losses " under section 23 (e) (1) of the Revenue Act of 1928, which applies in the case of a partnership. See section 183. " Losses sustained " by an individual (or partnership) are allowed as deductions under section 23 (e) (1) " if incurred in trade or business." The petitioners contend that the partnership " sustained losses " in the amounts stipulated and that those losses were incurred in the business of the partnership. The petitioner in each instance parted with the title to the securities in question for a short period of time. But in each instance it reacquired the same property or acquired substantially similar property within a few hours. The sales and acquisitions were all part of a prearranged plan. The prices at which the purchases were made were substantially the same as the prices at which the sales were made. The petitioners state that the sales were made solely for the purpose of reducing taxes. The petitioners concede that a loss, to be deductible under section 23 (e) (1), must have been incurred in the regular course of the business of the partnership. They erroneously state that the respondent has admitted the losses in question were so incurred. One of the respondent's arguments is that these sale transactions were not made in the regular course of the partnership business. Is a loss " incurred in trade or business " within the intended meaning of those words where, in accordance with a plan, the " sale " is made solely " to liquidate a portion of its losses " for tax purposes and is followed almost immediately by an offsetting purchase?

A corporation can not deduct a loss on a wash sale of stock or securities unless it is a dealer in those commodities and incurs the loss in " a transaction made in the ordinary course of its business." Sec. 118. " The ordinary course of its business " must mean a sale regularly made to a customer in order to dispose of stock in trade at the most advantageous terms. The words quoted must exclude a sale made to another dealer solely to register a loss for tax purposes, followed almost immediately by a purchase intended to replace the stock in trade with as little actual change as possible. Taxpayers, other than corporations, can not deduct a loss on a wash sale under any circumstances, unless they incur the loss in trade or business. Sec. 118. The parties erroneously state that the issue here is whether the losses in question " constitute deductible allowances within the meaning of section 118." That section has no direct application where, as here, a deduction is claimed under section 23 (e) (1). Nevertheless, the parties are right in assuming that Congress did not intend to allow any taxpayer a deduction for a loss from a wash sale, except where the sale was made and the loss was incurred in the regular course of the taxpayer's business.[2] Cf. *Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446; certiorari denied, 296 U. S. 586; *Dyer* v. *Commissioner*, 74 Fed. (2d) 685; certiorari denied, 296 U. S. 586.

Such sales and replacements as the partnership made solely to " liquidate " losses for tax purposes and with an existing intention to immediately repurchase were not made in the regular course of any trade or business in which it was engaged. They were not made, nor did they serve, to dispose of any of its stock in trade, to create profits, or to reduce loss. If profits were to result, no sales would have been made. The transactions would never have been made in the absence of a taxing statute. Thus they were outside of the regular course of the business of the partnership, although made in the ordinary way in which regular business deals would have been made. Their artificiality and lack of substance clearly distinguish them from all natural measures which a taxpayer may legally and successfully adopt to minimize taxes. Since the " losses " were not incurred in trade or business, there is no statutory authority for the deductions claimed.

The partnership sold and immediately repurchased in accordance with a predetermined plan. It made no effort to conceal or disguise its intent or acts. The courts and the Board have denied

---

[2] Where inventories are used the situation is so different that comparison is not helpful. Since sales are not necessary " wash sales " are not resorted to. But the taxpayer must follow a regular method and can not adopt any unusual procedure to register a loss under that system.

deductions in many cases where some artifice was used to conceal the fact that the taxpayer did not intend to, and did not, permanently part with control over his property even though he went through the form of selling it. *Shoenberg* v. *Commissioner, supra,* affirming 30 B. T. A. 659; *Rand Co.,* 29 B.T.A. 467; affd., 77 Fed. (2d) 450; *Dyer* v. *Commissioner, supra; Esperson* v. *Commissioner,* 49 Fed. (2d) 259; affirming 13 B.T.A. 596; certiorari denied, 284 U. S. 658; *Joseph Blumenthal,* 30 B.T.A. 125; *Luella Hoyt Slayton,* 29 B.T.A. 931; affd., 76 Fed. (2) 497; certiorari denied, 296 U. S. 586; *Mrs. J. B. Atkins,* 28 B. T. A. 500; petition for review denied, 76 Fed. (2d) 387; *James Brown,* 10 B. T. A. 1036, 1053; *J. R. Young,* 6 B.T.A. 656; *M. I. Stewart & Co.,* 2 B.T.A. 737; *Harold B. Clark,* 2 B.T.A. 555. Several of those cases involved sales made through an exchange in the usual way, but deductions were denied because the taxpayer never intended to definitely and completely part with ownership and control and in reality did not dispose of his property. Since the property was retained with the same chance of ultimate profit or loss as before, the transaction was not definitely closed and the deduction was not proper. The same reasoning applies here and the result is the same. The partnership in this case may not succeed by doing openly and directly the same thing which the other taxpayers unsuccessfully sought to disguise.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

McMahon, concurring in part: Upon the last issue I concur only in the result reached by the majority and I thus concur for other reasons as follows:

In the last analysis the ultimate and primary question here presented is whether an actual loss was sustained. In *Shoenberg* v. *Commissioner,* 77 Fed. (2d) 446, affirming *Sydney M. Shoenberg,* 30 B. T. A. 659; certiorari denied, 296 U. S. 586, the court stated:

\* \* \* Tax laws deal with realities. [Cases cited.] \* \* \*

To secure a deduction, the statute requires that an *actual* loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed—in other words, he has that much less than before.

A loss as to particular property is usually realized by a sale thereof for less than it cost. However, where such sale is made as part of a plan whereby substantially identical property is to be reacquired and that plan is carried out, the *realization* of loss is not genuine and substantial—it is not real. This is true because the taxpayer has not actually changed his position and is no

poorer than before the sale. The particular sale may be real but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities and no loss is deductible which is not real.

\* \* \* He was no poorer when the plan was executed than he had been before the sales by him, except for the brokerage commissions. He suffered no *real* loss but solely a paper one which could be shown only by considering one part of an entire plan and transaction. The entire plan was devised for the purpose of showing such loss. Its results must be judged as an entirety.

 \*  \*  \*  \*  \*  \*  \*

Herein the petitioners were no poorer after the alleged repurchases than they were before the alleged sales. They had the same interests in the assets of the corporations the securities of which are involved herein after such repurchases that they had prior to such sales. There is no proof to the contrary. They suffered no real or actual loss as a result of everything that occurred in this respect considered as a whole, as it should be.

Since the evidence establishes that the taxpayer did not by any dealings disclosed here intend to and did not, in reality, permanently part with the property interests involved, even though purported sales, in form only, were made, such dealings did not constitute sales resulting in deductible losses within the meaning of the revenue acts. *Sydney M. Shoenberg, supra; Joseph Blumenthal*, 30 B. T. A. 125; and *United National Corporation*, 33 B. T. A. 790. In each instance the alleged sale and repurchase occurred practically simultaneously. In one instance both occurred on the same day. In each instance the alleged buyer was known to petitioners, the alleged sellers who were dealing on their account, as disclosed by the stipulation. The whole plan discloses an intention on the part of petitioners to retain the securities indefinitely, the alleged sales and repurchases being matters of form and not of substance. Here there was more than a mere expectancy or hope to reacquire the same securities at some indefinite future time. There is disclosed an executed plan to retain them. The intention to retain the same property interests was the dominant factor in the plan. The petitioners did, in fact, retain indefinitely the same identical property interests, represented by the securities, and hence, they did not absolutely or permanently dispose of any of them or intend to do so. Their conduct in these respects is controlling upon the question of their intention. In *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; certiorari denied, 296 U. S. 641, the court stated that "the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize." In the instant proceedings the alleged immediate repurchase of the securities disclosed a purpose which defeated or contradicted the apparent transaction, i. e., the alleged

sale. Such is the purpose which counts here and defeats the deduction of the losses claimed.

The reason given by the majority for the result reached by them on this issue, which is to the effect that the claimed losses involved here are not deductible since sales were not made in trade or business because they were made solely to liquidate losses for tax purposes and hence were not made in the ordinary course of business is erroneous, not in accord with the decisions of the courts and the Board, and contrary to common practice. The majority proceeds upon the theory that sales were made but outside of petitioner's business. The taxpayers were engaged as partners in the business of buying and selling securities for customers and on their own account. Assuming, for the purposes of this discussion only, that sales were made, it follows that such sales were in the line of their business, since they involved securities dealt in by the petitioners. To increase the net profits of a business of buying and selling securities by means of a sale to reduce taxes is as much in the line of that business as a sale for profit or for avoidance of loss. These taxpayers, before us in these proceedings, did not in or by the making of the sales in question step out of their line of business or out of the ordinary course of their business. They remained therein all the while. The avoidance, reduction and postponement of taxes has been and is increasingly becoming a vital factor in many, if not most, business transactions. They have become matters of primary importance in the ordinary course of many a business. In fact the very structure of business organization and the very mode of doing business is, in many instances, influenced to a large extent by taxation; and comparatively few business transactions of importance are entered into without considering the effect of taxation, which is a dominant factor in the field of business generally. The motive or purpose behind such sales, whether to make a profit, avoid a probable or greater loss, or avoid, reduce or postpone taxes is not determinative so long as the means or devices employed are legal and are not prohibited by the revenue acts. A sale is such a means; in fact, deductible losses are often sustained through sales. " The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, can not be doubted." *Gregory* v. *Helvering*, 293 U. S. 465 (and cases cited therein). To the same effect are *Commissioner* v. *Eldridge*, 79 Fed. (2d) 629, affirming 30 B. T. A. 1322; and *Chisholm* v. *Commissioner*, *supra*. As heretofore pointed out, upon the authority of the latter case " the purpose which counts is one which defeats or contradicts the apparent transactions, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize." " It is

immaterial that the motive prompting the sale or the plan of which the sale was a part was to secure a deduction." *Shoenberg* v. *Commissioner, supra.*

We are not bound by the conclusions of the stipulation.

In any event, the petitioners have not met their burden of overcoming the presumption in favor of the correctness of the determination of the respondent in disallowing the losses in question.

---

LEECH, dissenting: (1) The majority opinion holds that the so-called old partnership sustained a deductible loss on the transfer of its assets to the so-called new partnership. I do not agree.

Either the old and new partnerships were, for present tax purposes, separate and distinct partnerships, or they were not.

In my judgment, the per curiam opinion of the Circuit Court of Appeals for the Second Circuit in the case of *Edward B. Archbald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720; certiorari denied, 293 U. S. 594, in which, as in the present case, partnership law of the State of New York was involved, is decisive that, for present purposes, the two partnerships before us were the same. If that be true, of course, the old partnership sustained no deductible loss on a transfer of its assets to itself.

On the other hand, if the old and new partnerships were separate and distinct, for present tax purposes, I think the record amply establishes the absence of any sale or conversion of the assets of the old partnership upon which any deductible loss was sustained.

The changes of capital interests of the old partners in the new firm are comparatively trifling. All the old partners remained in the new partnership. All the assets of the old partnership continued as assets of the new partnership. Its business was the same. Nowhere in the stipulation upon which the case was submitted is it possible to find any intimation that any new money was contributed to the new partnership, except the $50,000 contribution of Dunham, which made no substantial change in the picture presented. The assets of the old partnership were merely distributed to the old partners by a series of bookkeeping entries, and, by the same means, were then used as the contributions of the old partners to the new partnership. In my judgment, no deductible loss was sustained by the old partnership in that transaction. *Lester W. Fritz*, 28 B. T. A. 408; affd., 76 Fed. (2d) 460. Cf. *Grace A. Cowan, Executrix*, 30 B. T. A. 296.

(2) The majority opinion denies petitioners a loss on the sale of securities by the partnership of which they were members. The partnership was a " dealer in securities." Therefore, the " wash sale " provision in section 118 of the Revenue Act of 1928

is not applicable. The immediate reacquisition of securities, similar to those sold, is relevant here, only as evidence of the retention by the seller of an enforceable right to repurchase, thus contradicting the fact of a juristic sale. *J. R. Young*, 6 B. T. A. 656; *Harold B. Clark*, 2 B. T. A. 555, cited with approval as late as the *Shoenberg* case, 30 B T. A. 659.

The loss is deductible, if at all, under section 23 (e) (1) of that Act.[3]

A so-called sale to support a loss *under any circumstances* necessarily imports the absolute passing of title, legal and equitable. That was so before section 118 (*supra*) and its earlier prototypes became law. *Harold B. Clark, supra.* Such statutory provision did not abolish that prerequisite in any case. But, the mere intention of the seller to reacquire even the property sold does not contradict the passing of absolute title in a sale. *Harold B. Clark, supra.* Such an intent did not have that effect before section 118 (*supra*), and the similar provisions in the earlier revenue acts, became law. *Harold B. Clark, supra.* It does not do so now. The intent, *alone*, to repurchase the same or similar property, except when coupled with the concurrent power to execute it, in the form of a contract or option, does not now affect the tax results against which section 118 is directed. Cf. *Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446; certiorari denied, 296 U. S. 586; *Dyer* v. *Commissioner*, 74 Fed. (2d) 685; certiorari denied, 296 U. S. 586. However, section 118 is not applicable here. So, any denial of loss on the present sale must rest on the retention, by the seller, of an enforceable right to repurchase the property sold, from the *buyer*. See *Harold B. Clark, supra.*

The actual immediate reacquisition of substantially similar securities may be some evidence of the seller's intention, when selling, to repurchase. But that fact, even if established, is certainly not enough, alone, upon which to predicate the conclusion that the seller retained an equitable title in the securities in the form of an enforceable right to repurchase from the buyer, which is necessary to contradict the admitted sale. *Harold B. Clark, supra.*

None of the cases cited in support of the majority view, I think, dispute that position. The *Shoenberg* and *Dyer* cases, *supra*, upon which the majority opinion is largely supported, involved section 118. In both cases, the seller completely controlled the buying corporations and their actions as to the purchase and sale of securi-

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business.

ties. From this fact, together with actual reacquisition, the courts concluded that, within the time, before or after the sale, proscribed by section 118, the seller had "entered into a contract or option to acquire substantially identical property." That conclusion, under section 118, precluded any deductible loss.

In the present record, it is not even suggested, much less established, that the seller controlled the buyer. The absence of that premise would prevent the conclusion reached in the *Schoenberg* and *Dyer* cases, *supra*, where section 118, *supra*, was involved. And, much more certainly here, where that provision is not applicable, the absence of that premise prevents the conclusion, essential to the majority view, that the seller *retained* any enforceable right to repurchase from the *buyer*.

The present record, in my judgment, discloses an absolute sale.

But the majority view is that no loss on such sale is deductible, in any event, because such sale was not "in the ordinary course of business" of the partnership, since its purpose was tax reduction. I disagree. The selling partnership was in business for profit. A purpose to reduce, postpone or avoid Federal income taxes does not condemn the present transaction. *Gregory* v. *Helvering*, 293 U. S. 465, affirming 69 Fed. (2d) 809, which reversed 27 B. T. A. 223; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14, reversing 29 B. T. A. 1334; certiorari denied, 296 U. S. 641.

Reduction of its taxes, by any legal means, was, obviously, I think, "in [its] trade or business" of increasing the partnership profits. Cf. *Walter Thiele*, 32 B. T. A. 134.

ARUNDELL agrees with this dissent.

BLACK and TRAMMELL agree with the second point of this dissent.

---

TURNER: I concur in the above dissent with reference to the first point. If under New York law there was only one partnership, certainly no loss was sustained. If a new partnership was formed, the members of the old partnership, as their contributions to capital, merely transferred in kind their distributive shares of the old partnership assets. There was no completed transaction, and no loss was sustained.

SMITH agrees with the above.

---

MELLOTT: I concur in the dissent, but only on the first point. The majority opinion, I believe, is correct on the other issues.