## UNITED STATES v. FAIRBANKS.

## FAIRBANKS v. UNITED STATES.
### No. 8444.

Circuit Court of Appeals, Ninth Circuit.
April 2, 1938.

Arthur F. Driscoll and Dennis F. O'-Brien, both of New York City, and Paul

Vallee and John B. Milliken, both of Los Angeles, Cal., for Douglas Fairbanks.

James W. Morris, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Joseph J. Jones, and E. F. McMahon, Sp. Assts. to Atty. Gen., and Peirson M. Hall, U. S. Atty., and E. H. Mitchell and Alva C. Baird, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

The United States (hereafter called plaintiff) brought this action against Douglas Fairbanks (hereafter called defendant) to recover amounts aggregating $72,186.94 claimed to have been erroneously refunded to defendant on account of alleged overpayments of income taxes for 1927, 1928, and 1929, with 6 per cent. interest from the date of refund, January 26, 1932. The case was tried by the court without a jury, trial by jury having been expressly waived. The court made and filed special findings of fact and thereupon entered judgment in favor of plaintiff for the principal sum claimed, with 7 per cent. interest from the date (July 6, 1933) on which payment had been demanded of defendant. Both parties have appealed, plaintiff claiming that interest should have been allowed from the date of refund, defendant claiming that judgment should have been entered in his favor.

The action was brought under section 610(b) of the Revenue Act of 1928, 45 Stat. 875, 26 U.S.C.A. § 1646(b), which provides: "Any portion of 'an internal revenue tax (or any interest, penalty, additional amount, or addition to such tax) which has been erroneously refunded * * * may be recovered by suit brought in the name of the United States, but only if such suit is begun before the expiration of two years after the making of such refund. * * *"

Section 1104 of the Revenue Act of 1932, 47 Stat. 287, 26 U.S.C.A. § 1670(a) (3), provides: "Where the Commissioner has (before or after June 6, 1932) signed a schedule of overassessments in respect of any internal revenue tax imposed by the Revenue Act of 1932, or any prior reve-

nue Act, the date on which he first signed such schedule (if after May 28, 1928) shall be considered as the date of allowance of refund or credit in respect of such tax."

■ In this case, the schedule of overassessment was signed by the Commissioner on January 6, 1932. The refund check was delivered to the taxpayer on January 26, 1932. This suit was begun on January 20, 1934, more than two years after the signing of the schedule, but less than two years after the delivery of the refund check. Defendant contends that the two-year period specified in section 610(b) begins to run upon allowance of the refund —that is to say, upon the signing of the schedule by the Commissioner—and that this action, therefore, was not commenced in time. There is no merit in this contention. The two-year period commences, not upon the allowance, but upon the actual making of the refund. United States v. Wurts, 58 S.Ct. 637, 82 L.Ed. ——, decided March 14, 1938.[1] This action was in time.

The trial court's findings of fact are not challenged. Facts found were as follows:

Defendant in 1925 became the owner and registered holder of debenture bonds of the Elton Corporation of the par value of $4,000,000, dated March 5, 1925, payable March 5, 1935. Each bond contained the following provision: "This debenture bond may be redeemed by the corporation at any time at its face value plus interest earned and unpaid hereon upon thirty days' notice to the registered holder thereof." In 1927, 1928, and 1929, the corporation did so redeem bonds held by defendant, of the aggregate par value of $1,900,000, and defendant realized therefrom a 'taxable gain.

■ The question now to be decided is whether the gain so realized by defendant was a "capital gain," within the meaning of section 208(a) (1) of the Revenue Act of 1926, 44 Stat. 19, and section 101(c) (1) of the Revenue Act of 1928, 45 Stat. 811, 26 U.S.C.A. § 101 note. If so, it was taxable at the rate of 12½%.[2] If not, it was taxable at the higher (normal and surtax) rates[3] applicable to other income of defendant for the taxable years in question.

---

[1] Reversing United States v. Wurts, 3 Cir., 91 F.2d 547, cited by defendant.

[2] Revenue Act 1926, § 208(b), 44 Stat.

20; Revenue Act 1928, § 101(b), 45 Stat. 811, 26 U.S.C.A. § 101 note.

[3] Revenue Act 1926, §§ 210(a), 211(a),

By sections 208(a) (1) and 101(c) (1) the term "capital gain" is defined as meaning "taxable gain from the sale or exchange of capital assets consummated after December 31, 1921." It is conceded that the bonds in question were capital assets, and that they were redeemed after December 31, 1921. The question is whether such redemption constituted a "sale or exchange" of the bonds, within the meaning of sections 208(a) (1) and 101(c) (1).

We think not. Between the *redemption* of a bond and the *sale or exchange* thereof, there is a clear distinction. Such redemption is merely the payment of an obligation according to its terms. It is in no wise a sale or exchange. Watson v. Commissioner, 27 B.T.A. 463, 465;[4] Braun v. Commissioner, 29 B.T.A. 1161, 1177.

First of the revenue acts according special treatment to capital gains was that of 1921. The above-quoted definition of "capital gain" is found in the 1921 and subsequent Revenue Acts to and including that of 1932. Revenue Act 1921, § 206(a) (1), 42 Stat. 232; Revenue Act 1924, § 208(a) (1), 43 Stat. 262; Revenue Act 1926, § 208(a) (1), 44 Stat. 19; Revenue Act 1928, § 101(c) (1), 45 Stat. 811, 26 U.S.C.A. § 101 note; Revenue Act 1932, § 101(c) (1), 47 Stat. 191, 26 U.S.C.A. § 101 note. Defendant cites Report No. 350 of the House Ways and Means Committee and Report No. 275 of the Senate Finance Committee, accompanying the Revenue Bill of 1921, as indicating a purpose to include in this definition gains resulting from the redemption of capital assets. We find in these reports no indication of any such purpose. In Burnet v. Harmel, 287 U.S. 103, 106, 53 S.Ct. 74, 75, 77 L.Ed. 199, cited by defendant, the court said: "Before the act of 1921, gains realized from the sale of property were taxed at the same rates as other income, with the result that capital gains, often accruing over long periods of time, were taxed in the year of realization at the high rates resulting from their inclusion in the higher surtax brackets. The provisions of the 1921 Revenue Act for taxing capital gains at a lower rate, re-enacted in 1924 without material change, were adopted to relieve the taxpayer from these excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions. House Report No. 350, Ways and Means Committee, 67th Cong., 1st Sess. on the Revenue Bill of 1921, p. 10; see Alexander v. King [10 Cir.] 46 F.2d 235, 74 A.L.R. 174."

Thus, it appears, the purpose of Congress in relieving the taxpayer from "excessive tax burdens from gains resulting from a conversion of capital investments" was "to remove the deterrent effect of those burdens on such conversions." Conversions on which those burdens had a deterrent effect were sales and exchanges. Such burdens had, and have, no deterrent effect on the redemption of bonds or other capital assets. This, doubtless, is the reason why, prior to 1934, gains resulting from such redemption were never included in the definition of "capital gain." Whatever the reason, such gains were not so included, and the definition should not, we think, be expanded by judicial construction.

When Congress determined, as it did in 1934, to treat as "capital gains" gains resulting from the retirement of bonds issued by a government or corporation, it had no difficulty in expressing its intent in clear and unambiguous language. Revenue Act of 1934, § 117(f), 48 Stat. 715, 26 U.S.C.A. § 101(f). If such intent had existed prior to 1934, it could and, we think, would have found similar expression.

In awarding judgment for the principal sum claimed, the trial court did not err. It erred to the prejudice of plaintiff in allowing interest from the date of demand only. It erred to the prejudice of defendant in allowing interest at 7 per cent. Section 610(d) of the Revenue Act of 1928, as added by section 803(a) of the Revenue Act of 1936, 49 Stat. 1744, 26 U.S.C.A. § 1646(d), provides: "Erroneous refunds recoverable by suit under this section shall bear interest at the rate of 6 per centum per annum from the date of payment of the refund." In this case, therefore, 6 per cent. interest should have been allowed from January 26, 1932.

As to the principal sum awarded ($72,186.94), the judgment is affirmed. As to interest, it is reversed and the case is remanded, with directions to enter judgment

---

44 Stat. 21; Revenue Act 1928, §§ 11, 12(a), 45 Stat. 795, 796, 26 U.S.C.A. §§ 11 note, 12 note.

4 Overruling Werner v. Commissioner, 15 B.T.A. 482, cited by defendant.

in plaintiff's favor for 6 per cent. interest on said principal sum from January 26, 1932.