**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**J. I. MORGAN and Frances Morgan, Respondents.**

**No. 16395.**

United States Court of Appeals Ninth Circuit.

Dec. 11, 1959.

Charles K. Rice, Asst. Atty. Gen., Joseph Kovner, Lee A. Jackson, I. Henry Kutz, Attorneys, Department of Justice, for petitioner.

Carl E. Davidson, Charles P. Duffy, Portland, Or., for respondent.

Before STEPHENS, POPE and HAMLIN, Circuit Judges.

POPE, Circuit Judge.

The facts which concern this review are set forth in the Findings of Fact of the Tax Court as follows:

"On or about August 10, 1937, J. I. Morgan acquired an 'Accumulative Investment Certificate,' Series F.–232668, from Investors Syndicate (presently known as Investors Diversified Services, Inc.) of Minneapolis, Minnesota. Under the terms of the certificate, the issuing company agreed to pay to Morgan (with certain options) at the expiration of 15 years, an amount in excess of his aggregate payments. On September 28, 1952, J. I. Morgan exercised one of the

available options to extend the certificate for an additional period of not more than 10 years."

"The following is a detailed statement of the foregoing 'Accumulative Investment Certificate':

"Investors Syndicate
Minneapolis, Minnesota

Name Changed on 3–30–49 to: Investors Diversified Services, Inc.

Number—Series F232668

Dated 8–10–37.

Annual Advance Payment for 15 years ............ $600.00

Maturity in 15 years (option 13 elected 9–28–52 to continue not more than 10 years).

With optional settlement privileges.

| Cash Value[1] for each $25.00 Maturity | Year | To | Cash Value end of year | Paid In | Excess of Cash Value over amounts Paid In | Yearly Increase |
|---|---|---|---|---|---|---|
| $    44 | 1 |  | $    220 | $    600 |  |  |
| 134 | 2 |  | 670 | 1,200 |  |  |
| 264 | 3 |  | 1,320 | 1,800 |  |  |
| 400 | 4 |  | 2,000 | 2,400 |  |  |
| 540 | 5 |  | 2,700 | 3,000 |  |  |
| 700 | 6 |  | 3,500 | 3,600 |  |  |
| 860 | 7 |  | 4,300 | 4,200 |  |  |
| 1,024 | 8 |  | 5,120 | 4,800 |  |  |
| 1,200 | 9 |  | 6,000 | 5,400 |  |  |
| 1,418 | 10 | 8–10–47 | 7,090 | 6,000 |  |  |
| 1,600 | 11 | 8–10–48 | 8,000 | 6,600 |  |  |
| 1,810 | 12 | 8–10–49 | 9,050 | 7,200 | $1,850 |  |
| 2,020 | 13 | 8–10–50 | 10,100 | 7,800 | 2,300 | $450 |
| 2,240 | 14 | 8–10–51 | 11,200 | 8,400 | 2,800 | 500 |
| 2,500 | 15 | 8–10–52 | 12,500 | 9,000 | 3,500 | 700 |
| 2,724 | 16 | 8–10–53 | 13,620 | 9,600 | 4,020 | 520 |
| 2,958 | 17 | 8–10–54 | 14,790 | 10,200 | 4,590 | 570" |

The Commissioner determined that the annual increases listed in the last column of the foregoing statement, that is to say, the annual increases in the excess of the cash value of an Investors Syndicate certificate over the amounts paid in, represented interest taxable as ordinary income, and since taxpayers (Morgan and wife) kept their books and filed their federal income tax returns on the accrual basis, he held such interest taxable during each of the respective years of increase, namely, 1950 to 1954 inclusive.

The taxpayers, respondents here, petitioned the Tax Court for a redetermination, contending that the annual increment in the cash value of such a certificate is not properly taxable during the years of increase, but is taxable only upon retirement at maturity as capital gain under § 117(f) of the 1939 Code.[2]

1. This heading should be "Cash Value for each $25C0 maturity" instead of $25.00 maturity.

2. "§ 117.  Capital Gains and Losses. * * (f) Retirement of bonds, etc.  For the purposes of this chapter, amounts re-

This contention of the taxpayers was sustained in the Tax Court whose brief opinion was to the effect that the decision was ruled by the case of Commissioner of Internal Revenue v. Caulkins, 6 Cir., 144 F.2d 482, which affirmed the Tax Court's decision reported in 1 T.C. 656.

While the controversy here did not arise in the same manner as that in the Caulkins case, supra, yet that case did present an identical issue, and involved the same type of certificate. It is a decision squarely against the Commissioner's position here; hence, in the main, we deal here with the Commissioner's contention that the Caulkins case was wrongly decided.[3]

■ On the face of the certificate it would appear that the increment, here involved, is consideration paid for the use of the amounts paid in. "[A]s respects 'interest', the usual import of the term is the amount which one has contracted to pay for the use of borrowed money." Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 214, 76 L.Ed. 484. And under § 22(a), Internal Revenue Code of 1939, " 'Gross income' includes gains, profits, and income derived * * * from interest * * *." 26 U.S.C.A. § 22(a).[4]

The apparently simple conclusion to which these considerations appear to point has been rejected by the Tax Court. Commissioner of Internal Revenue v. Caulkins, supra, which induced this attitude, held that the increment received upon the retirement of a certificate such as the one here involved, was taxable as a capital gain under § 117(f) (footnote 2, supra), and not as ordinary income, even though such increment included interest.

The situation which gave rise to the enactment of § 117(f) is illustrated by the decision of this court in Fairbanks v. United States, 9 Cir., 95 F.2d 794, affirmed 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855, a case which concerned taxes for the years 1927, 1928 and 1929. There the taxpayer had acquired certain corporate bonds in exchange for property worth much less than the par value of the bonds. When a number of the bonds were retired at par value by the corporation, taxpayer took the position that the gain he realized was a "capital gain". Noting that the statute defined "capital gain" as meaning "taxable gain from the sale or exchange of capital assets", the court held that a redemption of the bonds such as had occurred was not the same as a "sale or exchange thereof", and hence rejected the taxpayer's contention. In affirming, the Supreme Court (Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855) noted that the Board of Tax Appeals, after some vacillation, had in 1932 held the same way in Watson v. Commissioner, 27 B.T.A. 463. Neither the Fairbanks nor the Watson

ceived by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor." 26 U.S.C.A. § 117(f).

3. With respect to acquiescence in Caulkins, the Commissioner's brief states: "While for some years the Commissioner acquiesced in the Caulkins decision (1944 Cum.Bull. 5), namely, from December 25, 1944, to December 31, 1954, thereafter he expressly withdrew his acquiescence. In Rev.Rul. 119, 1953-2 Cum. Bull. 95, the Commissioner ruled that

the discount interest on Israeli bonds payable as cash value or on maturity was ordinary income and confined Caulkins to its precise facts. And in Rev.Rul. 56–299, 1956–1 Cum.Bull. 603 (republishing Rev.Rul. 55–136, 1955–1 Cum.Bull. 213), the Commissioner withdrew his acquiescence in Caulkins. . . . Taxpayer is in no way prejudiced by the Commissioner's action, since he purchased the investment certificates in 1937 before the Caulkins decision in 1944 and the Commissioner's subsequent acquiescence and withdrawal of acquiescence."

4. The corresponding section of the 1954 Code is § 61(a) (4), 26 U.S.C.A. § 61 (a) (4).

case, just cited, involved any gain from interest collections.[5]

Following the decision in the Watson case, in 1932, § 117(f) was first enacted as part of the 1934 Revenue Act. It was prompted by a recommendation from the American Bar Association, and it was proposed in order to reverse the results arrived at in the Watson case.[6]

It seems plain that § 117(f) was not designed to accomplish any other purpose. Nowhere in its text, or in its legislative history, is there any suggestion that if, upon redemption of such bonds, the taxpayer receives not only (a) payment of principal in full in excess of his cost of acquisition, but also (b) increments representing interest such as those here involved, the latter sums would be converted into capital assets or taxed as capital gains. In the nature of the case, interest is not capital,[7] and for § 117(f) to make it so for tax purposes very definite and specific language to that effect would be required. There is no such provision in that section.

If we take the literal language of § 117(f) and apply it here, we have no difficulty in arriving at a conclusion that these increments should be treated as ordinary income. The operative words are: "Amounts received by the holder upon retirement * * * shall be con-

sidered as amounts received in exchange therefor." What happens when there is a sale or exchange of something which is a combination of (a) a capital asset, and (b) interest or other earnings from that asset, is not in doubt. Such a situation existed in Fisher v. Commissioner, 6 Cir., 209 F.2d 513. Fisher held notes for advances he had made to a corporation in the amount of $133,849.44. On September 1, 1944, the notes were in default both as to principal and interest, the unpaid interest being $75,574.29. He sold the notes to another corporation for $200,000. The latter corporation ultimately collected both notes and interest. Fisher, a cash basis taxpayer, returned the difference between the sale price and the face of the notes, as capital gain. The Commissioner determined this amount, $66,150.56, to be ordinary income, and added it to net income. This action was sustained by the Tax Court and the Court of Appeals on review. Said the latter court: "One who receives income for the use of money or property * * * is taxable upon such income. * * * The petitioner received substantially all of his defaulted interest when he sold his notes to Prime. * * *" (209 F.2d at pages 514–515.)

In United States v. Snow, 9 Cir., 223 F.2d 103, 109, certiorari denied 350 U.S.

5. Watson involved a *loss* on redemption sought to be treated as a capital loss. The record in the Fairbanks case showed the gain, there asserted to be capital gain, included only the principal of the bonds.

6. The statement to the Senate Finance Committee on behalf of the Bar Association was as follows: "Section 101 (c) of the 1932 Act defines capital gains and losses as the gains or losses resulting from the 'sale or exchange' of capital assets. The United States Board of Tax Appeals has determined in Henry P. Werner, 15 B.T.A. 482, that included within the terms of 'sale or exchange' was the redemption by the obligor, at or before maturity, of a capital asset. Later, the Board held in Watson, 27 B.T.A. 463, that such redemption was not a 'sale or exchange'. Your committee believes that the Congress did not intend

to remove from the benefits of the capital gains and loss provisions gains or losses from the redemption of capital assets, especially when such gains or losses if the assets had been sold by the holder immediately before redemption, would be considered capital gains or losses." Hearings, Senate Finance Committee, 73d Cong., 2d Sess., on H.R. 7835, p. 76.

7. These certificates, though purchased on the installment plan, have a close resemblance to obligations issued at a discount. In the latter case, original discount is treated as ordinary income. I.R.C.1939, § 42(b), 26 U.S.C.A. § 42(b); I.R.C.1954, § 454(a), 26 U.S.C.A. § 454 (a). It would be surprising if the sums representing consideration for the use of the moneys loaned were given any different treatment here.

831, 76 S.Ct. 64, 100 L.Ed. 741, this court noted and approved the distinctions drawn in Fisher v. Commissioner, supra. Said this court: "In the Fisher case the court pointed out that the fundamental error of the taxpayer was his failure to recognize that gain realized upon the sale of a capital asset which has appreciated in value is capital gain; whereas, gain realized by way of income from the capital asset is ordinary income."

In that case Snow sold to his associates his one-fourth interest in a partnership. The sale was at book value, $133,000. Of this amount $71,000 was his original investment. The balance, $62,000 represented his share of undistributed partnership earnings. The lower court upheld his treatment of this $62,000 as a capital gain, saying: (at page 105) "The transaction here involved was the sale of a one-fourth interest in the said partnership, and the gain derived from the taxpayer herein as a result of said sale was derived from the sale of a capital asset, as defined by Section 117, Title 26 U.S.C.A." Reversing, this court held: "It is a fundamental principle of federal tax law that you must regard any ordinary income derived from an income-producing capital asset as ordinary income. Consequently, the assignment of accrued ordinary income must be treated separately from the assignment of the capital asset which produced the income. * * * The general rule is that a right to receive ordinary income, produced by a capital asset, is not transmuted into a capital asset by the sale or assignment of the capital asset together with the right to receive the ordinary income." (at page 108) The holding was that Snow's share of the partnership net earnings should be taxed as ordinary income.

The teaching of the Fisher and Snow cases is that on sale or exchange of a capital asset together with the earnings therefrom, (a note plus past due interest; a share in partnership capital plus a share in earnings), the earnings are not deemed capital assets, and the realization of them through sale or exchange is not entitled to capital gains treatment. If, under § 117(f) "amounts received by the holder upon retirement of bonds * * * or other evidences of indebtedness * * * shall be considered as amounts received in exchange therefor", then the holdings in Fisher and Snow demonstrate that the amounts realized by way of interest are not deemed capital assets—they represent ordinary income.[8]

For this reason we are compelled to disagree with the decision in Commissioner of Internal Revenue v. Caulkins, supra. We decline to follow it.[9]

In the 1954 Code there was included a provision relating to original issue discount bonds issued after December 31, 1954, which provided expressly that any gain realized by the holder of a bond attributable to the original issue discount would be taxed as ordinary income. This is § 1232(a) (2) of the 1954 Code, 26 U.S.C.A. § 1232(a) (2). It undertook to separate the interest element from the

8. Basic to these holdings is the principle stated in Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75.

9. Cf. Mertens, Law of Federal Income Taxation, Vol. 3B, § 22.40, pp. 182, 185: "In determining the extent to which there really is a disposition of one item constituting a capital asset, and not two items one of which represents dividend or interest income, account must be taken of the principles of anticipatory realization of income, for the courts apparently are prepared to achieve some integration between those principles and the concept of a capital asset. If under those principles the 'property' in the taxpayer's hands represents a right to income which has matured to such a point that he cannot avoid tax on that income by making a gift of it, the recent trend of the courts is also to refuse to permit him to convert it into capital gain through a sale or exchange of the right." [After citing other cases, including Fisher v. Commissioner, supra,] "[I]t is difficult to reconcile these recent decisions with the Caulkins case, and ultimate rejection of the Caulkins case appears to be portended by the trend of recent decisions."

capital gain element. Respondents argue that by making this new provision for bonds issued in the future, Congress recognized that it effected a change, and thereby recognized that the law previously was settled by the Caulkins decision. We think not. The Senate Report which accompanied the legislation, (S.Rep. No. 1622, 83d Cong., 2d Sess. p. 112; 3 U.S.C. Cong. & Adm. News, 1954, 4621, 4745), noted that there was "some uncertainty as to the status of proceeds in these transactions. * * * The House bill removes doubt in this area." We find here no evidence that the new enactment did any more than that.

Since, during each of the years here in question taxpayers, on the accrual basis, had the "fixed right to receive" (Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 464, 79 S.Ct. 1270, 1280, 3 L.Ed.2d 1360), the amounts of annual increment here shown, those amounts had accrued and were taxable in those years.

The judgment is reversed and the cause remanded to the Tax Court for a determination of the income tax deficiency resulting from the taxation of the annual increment of cash value as ordinary income of the taxpayers for the years 1950 through 1954.