RICHARD B. GIBBONS AND MARY LOUISE GIBBONS, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75124. Filed December 27, 1961.

*Kenneth S. Carey, Esq.*, for the petitioners.
*William T. Ivey, Jr., Esq.*, for the respondent.

OPINION.

PIERCE, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1955 in the amount of $2,315.50. Petitioners allege that there is an overpayment of said tax, in the amount of $138.46.

The sole issue for decision is: Whether fully earned increments on 15-year investment certificates issued by a corporation in registered form—representing the difference between the issuance prices of the certificates and the amounts of the maturity values thereof that petitioners realized at the close of the certificates' 15-year periods—constitute capital gains or ordinary income.

An additional issue pertaining to the amount of the deduction allowable to petitioners for medical expenses, is dependent upon the outcome of the above-stated issue and will be dealt with in the computations of tax to be made hereafter under Rule 50. All other issues raised in the pleadings have been eliminated, either by stipulation of the parties or through abandonment by the petitioners.

The facts of the case have all been stipulated, and are so found. The stipulation of facts, including the exhibits thereto attached, is incorporated herein by reference. A summary of the stipulated facts pertinent to the issue here considered, is as follows.

Petitioners Richard B. and Mary Louise Gibbons are husband and wife, residing in San Francisco, California. They filed a joint income tax return for the taxable year involved, with the district director of internal revenue at San Francisco.

On May 8, 1939, petitioners purchased from Industrial Finance and Thrift Corporation, of New Orleans, Louisiana, a 15-year Collateral Trust Installment Certificate issued by said corporation, which was payable upon its retirement at the expiration of 15 years, in the

amount of $10,000 that was in excess of its issuance price; and which bore the number XV–236. Also on October 11, 1940, petitioners purchased another similar certificate from said issuing corporation, which likewise was payable upon its retirement at the expiration of 15 years, in the amount of $10,000 that was in excess of its issuance price; and which bore the number XV–1142.[1] Each of these certificates was in registered form; and each stated on its face, so far as is here material:

KNOW ALL MEN BY THESE PRESENTS that Industrial Finance and Thrift Corporation, a Corporation organized and existing under the laws of the State of Louisiana, First Party, hereinafter referred to as the Company, certifies that in consideration of the application for this certificate, which application is made a part hereof, and the payment of Four Hundred Five and 30/100 Dollars ($405.30) annually in advance to the Company for a period of Fifteen years from date hereof, the said Company hereby promises to pay to * * * [the registered holder] at the expiration of said period, the sum of Ten Thousand and no/100 Dollars ($10,000.00) upon presentation and surrender of this Certificate to the Company * * *.

The application herefor signed by the original holder, and the trust agreement hereinafter referred to, and the terms, privileges, rights, conditions, exceptions, limitations and endorsements set out on the succeeding pages hereof are expressly declared to be a part of this contract * * *

The above-mentioned succeeding pages of each certificate set forth under numbered sections, certain privileges and conditions of which the following are here material:

2. PAYMENTS [by registered holders]: * * * Any payment made in excess of the current year's requirement and more than thirty days in advance of its due date shall be deemed an advance payment and shall bear interest at the rate of 6% compounded annually and shall increase by such amount plus the interest credited thereon, the optional settlement rights shown in section five. Such advance payment shall be applied on annual payments when they become due.

\* \* \* \* \* \* \*

5. OPTIONAL SETTLEMENTS PRIOR TO MATURITY: After this Certificate has been in force for any of the periods shown in the "Table of Values" under section 6, exclusive of all periods of default, the registered holder, upon written request and surrender of this Certificate subject to section twelve and subject to any indebtedness due the Company, may elect either of the following options:

Option "A": Receive in cash the amounts shown under Cash or Loan Values in said table; or the Company will, upon the sole security and proper assignment hereof, lend to Second Party, at such rate of interest as may be agreed upon, any sum not exceeding said Cash or Loan Value.

Option "B": Exchange this Certificate for a Paid Up Certificate due at the maturity date hereof for the amount designated in said table.

---

[1] Copies of the certificates attached to the stipulation of facts, indicate that both were actually purchased by the petitioner wife on the dates above mentioned, prior to her marriage and under her maiden name; and that thereafter they were transferred to and reregistered under the names of both petitioners, as joint holders. This situation will not affect the decision of the issue before us; and therefore we have adopted the provisions of the stipulation of facts, and found that the certificates were purchased by the petitioners.

## 6. TABLE OF VALUES
Per $1000.00 at end of years shown below:

To obtain values hereof multiply by the multiple of $1000.00 in the face of Certificate

| Year | Cash or Loan Values | Paid Up Certificate | Year | Cash or Loan Values | Paid Up Certificate |
|---|---|---|---|---|---|
| 1 | | | 11 | 567.63 | 716.34 |
| 2 | 27.65 | 58.97 | 12 | 659.36 | 785.89 |
| 3 | 72.27 | 143.40 | 13 | [1] | 858.08 |
| 4 | 119.57 | 226.94 | 14 | 876.31 | 928.88 |
| 5 | 169.71 | [1] | 15 | 1,000.00 | |
| 6 | 223.38 | 377.80 | 16 | | |
| 7 | 281.06 | 448.00 | 17 | | |
| 8 | 343.30 | 516.32 | 18 | | |
| 9 | 410.69 | 582.76 | 19 | | |
| 10 | 485.06 | 649.00 | 20 | | |

### Installment Payment Schedule

| Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|
| 40.53 | 20.75 | 10.50 | 3.65 |

[1] Figure illegible on exhibit.

Certificate XV–236 matured and was presented for redemption by petitioners on March 15, 1955. At that time petitioners received as the maturity value of the certificate, the sum of $10,876.36 which was $4,533.66 in excess of the total amount of $6,342.70 that they had paid as the purchase price of said certificate under the terms thereof.

Certificate XV–1142 matured on October 11, 1955, and was presented for redemption by petitioners on January 3, 1956. On the latter date petitioners received as the maturity value of this certificate, the sum of $10,677.06 which was $6,098.76 in excess of the total amount of $4,578.30 that they had paid as the purchase price of said certificate under the terms thereof; and they also received $137.40 as interest for the period subsequent to the date of the certificate's maturity.

The aggregate amount of the increments on the two certificates to their respective maturities was $10,632.42; and there is now no dispute that said increments constitute either capital gain or ordinary income to petitioners for their taxable year 1955 in which the certificates matured and became payable. The differences in the costs, maturity values, and increments of the two certificates are due to additional credits in respect of advance payments on the purchase prices made by the petitioners pursuant to the privilege accorded them under the supplemental provisions of the certificates.[2] The respondent, in his notice of deficiency, determined that said aggregate

[2] As shown in the notice of deficiency herein, certificate XV–1142 was purchased outright in 1940 for the lump sum of $4,578.30, which has been stipulated to be petitioners' total cost thereof.

increments in the amount of $10,632.42 constituted interest income which was taxable as ordinary income.

We turn now to consideration of the sole issue presented for decision: Whether the fully earned increments above mentioned, which became available to petitioners upon the maturity of the investment certificates at the expiration of their 15-year periods, constitute capital gains or ordinary income. Petitioners contend that under the provisions of section 1232(a)(1) of the 1954 Code,[3] said increments must be treated as capital gains. Respondent, on the other hand, contends that said increments represent compensation in the nature of interest for use of petitioners' money; and that, while the above statute provides that amounts received on retirement of bonds or other evidences of indebtedness "which are capital assets in the hands of the taxpayer," shall be considered as having been received in "exchange" and thereby be given the same treatment as though the instruments had been "sold," said statute does not effect any variation from the general rule that any portion of amounts received on sale or exchange of a capital asset which represents "interest," must be taxed as ordinary income and not as capital gain.

This problem is one as to which judicial opinions have differed.

In 1943, this Court decided the case of *George Peck Caulkins*, 1 T.C. 656, which involved an issue and facts indistinguishable from those here present; and this Court there determined that increments on a 10-year registered Accumulative Investment Certificate issued by an investors syndicate, which the taxpayer had received upon retirement of the certificate at the close of its 10-year period, were taxable under section 117(f) of the Revenue Act of 1938 (which is cognate to section 1232(a)(1) of the 1954 Code), as capital gain and not as ordinary income. On appeal, this decision was affirmed by the Court of Appeals for the Sixth Circuit (144 F. 2d 482) ; but that court recognized in its opinion that the result appeared to be out of harmony with basic principles pertaining to capital gains—stating:

The inherent difficulty in construing § 117(f) is presented in cases like this, where the amount received upon retirement of the security is calculated under the capital gains statute, although the transaction presents no true aspect of capital gain. * * *

While granting that the security held by the taxpayer is an evidence of indebtedness of the character described in § 117(f), the Commissioner contends that

[3] SEC. 1232. BONDS AND OTHER EVIDENCES OF INDEBTEDNESS.

(a) GENERAL RULE.—For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof—

(1) RETIREMENT.—Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).

that section was not intended to cover the gain from interest, but only capital gain. It is pointed out that the increment here is identical with interest compounded at 5½% during the agreed period; [and] that the issuing company in its information return considered it as interest * * *. The Commissioner hence urges that the increment in value of the certificate constitutes compensation for the use of the taxpayer's money, which the Supreme Court has recently stated to be interest, Cf. Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, and that as such it must be taxed in its entirety as ordinary income under § 22(a).

Congress might well have made the differentiation urged by the Commissioner, since it is difficult to perceive any practical reason for taxing increment of the type involved here differently from ordinary income. * * * The increment is consideration paid for the use of the amounts paid in. Unfortunately for the Commissioner's contention, Congress has not made the differentiation.

The decision in the *Caulkins* case was thereafter followed by this Court in several similar cases. And it was followed also by the District Court for the Western District of Louisiana in the more recent case of *Wood* v. *United States* (not officially reported but to be found in 60–2 U.S.T.C. par. 9798 and 6 A.F.T.R. 2d 5991), now pending on appeal to the Court of Appeals for the Fifth Circuit.

In December 1959, the Court of Appeals for the Ninth Circuit dealt with this same problem in *Commissioner* v. *Morgan*, 272 F. 2d 936, reversing 30 T.C. 81, wherein both this Court and the Court of Appeals concluded that the issue there presented was identical with that presented in the *Caulkins* case. The taxpayer in the *Morgan* case was on the accrual basis, and the Commissioner had determined that the annual increases in the cash value of a 15-year investment certificate represented "interest," which had accrued and was taxable as ordinary income for the respective years in which the increases had occurred. But this Court held, in accordance with its decision in the *Caulkins* case, that the increments in the value of the certificate were taxable under section 117(f) of the 1939 Code, and section 1232(a)(1) of the 1954 Code, as capital gain at the maturity of the certificate, and not as ordinary income.

On the appeal from our said decision in the *Morgan* case, the Ninth Circuit made an extended review of the pertinent judicial authorities, and of the history and purpose of section 117(f); and it then concluded that the *Caulkins* case had been wrongly decided. The rationale of said court's opinion was, in substance, that the increment on the investment certificate involved, represented a type of "interest" which had been paid for the use of the amounts which the holder had paid in; and that such "interest" was specifically includible in gross income, under the provisions of section 22(a) of the 1939 Code [4] (and the corresponding section 61(a) of the 1954 Code). The court further

---

[4] Section 22(a) of the 1939 Code: " 'Gross income' includes gains, profits and income derived * * * from interest * * *"

concluded that section 117(f), as shown by its history, was not designed to vary or change said requirement of section 22(a) ; but rather, it was intended to reverse the results of certain decisions (illustrated by the decision of this Court in *John H. Watson, Jr.*, 27 B.T.A. 463 (1932), and *Fairbanks* v. *United States*, 95 F. 2d 794 (C.A. 9), affd. 306 U.S. 436), wherein it had been held that a *redemption* of bonds was not the same as a *sale or exchange thereof*, and hence that gains derived in respect of the *principal* of the bonds (no gain from interest collections being involved) could not be treated as capital gains. The Ninth Circuit in its opinion, said (pp. 939–940) :

> Following the decision in the Watson case, in 1932, § 117(f) was first enacted as part of the 1934 Revenue Act. It was prompted by a recommendation from the American Bar Association, and it was proposed in order to reverse the results arrived at in the Watson case.[6]
>
> It seems plain that § 117(f) was not designed to accomplish any other purpose. Nowhere in its text, or in its legislative history, is there any suggestion that if, upon redemption of such bonds, the taxpayer receives not only (a) payment of principal in full in excess of his cost of acquisition, but also (b) increments representing interest such as those here involved, the latter sums would be converted into capital assets or taxed as capital gains. In the nature of the case, interest is not capital,[7] and for § 117(f) to make it so for tax purposes very definite and specific language to that effect would be required. There is no such provision in that section.
>
> If we take the literal language of § 117(f) and apply it here, we have no difficulty in arriving at a conclusion that these increments should be treated as ordinary income. The operative words are: "Amounts received by the holder upon retirement * * * shall be considered as amounts received in exchange therefor." * * *
>
> * * * Said this court [in a prior case] : "In the Fisher case [*Fisher* v. *Commissioner*, (C.A. 6), 209 F. 2d 513] the court pointed out that the fundamental error of the taxpayer was his failure to recognize that gain realized upon the sale of a capital asset which has appreciated in value is capital gain; whereas, gain realized by way of income from the capital asset is ordinary income."
>
>     *      *      *      *      *      *      *
>
> For this reason we are compelled to disagree with the decision in Commissioner of Internal Revenue v. Caulkins, supra. We decline to follow it.[9]
> [Footnotes omitted.]

The most recent decision involving the present problem is that of the Court of Appeals for the Third Circuit, in *Rosen* v. *United States*, 288 F. 2d 658 (1961), reversing 185 F. Supp. 805 (W.D. Pa.). In this case also, the reviewing court made an extended review of judicial authorities and the pertinent statutory provisions; and it then agreed with the holding of the Ninth Circuit in the *Morgan* case, that the *Caulkins* case had been wrongly decided; and it declined to follow the same.

The issue in the *Rosen* case was exactly the same as that in the instant case: Whether fully earned increments yielded by an investment contract—representing the excess of the amount which became avail-

able to the taxpayer at the maturity of the contract, over the amount he had paid therefor—was taxable as ordinary income or as capital gain. Because of the thoroughness and lucidity of the Third Circuit's opinion in this case, we quote rather extensively therefrom, as follows:

We think it is clear that the difference between the $9,750 paid by the taxpayer and the contract's predetermined maturity value of $12,500, as realized by the taxpayer, constituted interest and, therefore, would normally be taxed as ordinary income. * * * Thus, it seems anomalous to tax * * * [such] increment as capital gain.

* * * We see no escape from the conclusion that, in the present case, the difference between the total amount paid by the taxpayer and the larger sum agreed to be paid and in fact paid to him at the maturity of the contract is essentially the same as original issue discount on a bond in its character as compensation for the use of money which the contract holder has paid to the company from time to time. Indeed, even in the Caulkins case, which concludes, for other reasons, that such increment is to be taxed as capital gain, the court recognizes that the gain is essentially a realization of interest income. * * *

In these circumstances, in the absence of some overriding statutory mandate to the contrary, the increment in the nature of original issue discount would be taxed as interest under Section 61 of the 1954 Code * * *.

* * * Thus, the question to be decided is whether the requirement of Section 1232(a)(1) that amounts received on retirement of certain "evidences of indebtedness shall be considered as amounts received in exchange therefor" is tantamount to saying that the entire increment realized in such an exchange must be taxed as capital gain rather than ordinary income.

The statute does not say that all increment thus realized must be taxed as capital gain. Whether it means that can best be determined by looking at the normal and accepted tax treatment of increments realized on the actual sale or exchange of capital assets, to which Section 1232(a)(1) analogizes the retirement of evidences of indebtedness. Since we are here dealing with fully earned increments which are distributed at the maturity of a certificate of indebtedness, we look for guidance to cases in which the increment that enlarges the price of a capital asset on an actual sale or exchange is also fully earned and accrued.

It often happens that interest-bearing notes or bonds are sold for more than their face value at a time when interest has accrued and is overdue. In such cases it is held that the part of the selling price which is attributable to accrued interest is taxable as ordinary income. Fisher v. Commissioner, 6 Cir. 1954, 209 F.2d 513, certiorari denied 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136; Warner A. Shattuck, 1955, 25 T.C. 416. The same result has been reached where notes issued at a discount have been sold shortly before maturity at substantially more than the price of original issue but slightly less than maturity value. F. Rodney Paine, supra [23 T.C. 391]. A situation which is analogous, though it does not involve interest, arises when a partner's share in a partnership is sold for a price which includes the value of fees fully earned by the partnership but not yet collected. Tunnell v. United States, 3 Cir. 1958, 259 F.2d 916. Accord United States v. Snow, 9 Cir. 1955, 223 F.2d 103.[2]

These cases exemplify what Circuit Judge Kalodner, speaking for this court, has accurately characterized as the "general rule * * * that a right to receive ordinary income produced by a capital asset, is not transmuted into a capital asset by the sale or assignment of the capital asset together with the right to

receive the ordinary income." Tunnell v. United States, supra, 259 F.2d at page 919. We find no reason to believe that Section 1232(a)(1) has abrogated that general rule in the retirement cases it covers. Rather, as Circuit Judge Pope convincingly demonstrates in the Morgan case [*Commissioner* v. *Morgan*, 272 F.2d 936], that section serves to assure capital gains treatment of a different kind of increment which is realized by a taxpayer who has acquired evidences of indebtedness at a low cost basis, either because their value was then in doubt or because they were received in a tax free exchange for low-basis property, and has held them until their retirement at face value. Before the adoption of Section 117(f), now Section 1232(a)(1), it had been said that such increment must be taxed as ordinary income because a retirement was not a sale or exchange. See Watson v. Commissioner, 1932, 27 B.T.A. 463, 465. Thus, the section in question was intended to insure capital gains treatment of an increment which was quite different in kind from interest or dividends. Construing the language of the statute in the light of this limited purpose and of the tax treatment normally accorded gain in the nature of interest or dividends realized on sales and exchanges of capital assets, we reach the conclusion that Section 1232(a)(1) does not call for capital gains treatment of the kind of increment we are now considering. Cf. Allen Tobey, 1956, 26 T.C. 610. We shall follow the Morgan case rather than the Caulkins case [*Commissioner* v. *Caulkins*, 144 F.2d 482]. [Footnote omitted.]

It is our conclusion from all the foregoing, that the decisions of the Ninth Circuit and Third Circuit in the above-cited *Morgan* and *Rosen* cases are correct. They not only have given section 1232(a)(1) of the statute an interpretation which expresses its original purpose and intent, but which also correlates it with section 61(a), and harmonizes it with basic principles pertaining to capital gains, interest, and dividends from securities generally. We think these decisions should be given effect in the instant case.

Accordingly, we decide the issue here presented in favor of the respondent. Our decision in the *Caulkins* case will no longer be followed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*