**W. Palmer DIXON et al., Plaintiffs,**

**v.**

**UNITED STATES of America,
Defendant.**

United States District Court
S. D. New York.
Nov. 1, 1963.

Stroock & Stroock & Lavan, New York City, for plaintiffs; Bernard E. Brandes, Sanford Saideman, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., S. D. New York, for defendant; Robert Arum, Morton L. Ginsberg, Asst. U. S. Attys., of counsel.

LEVET, District Judge.

These are cross motions for summary judgment in an action for refund of federal income taxes paid by the plaintiffs for the taxable year 1952 in the sum of $369,329.65 plus interest. Jurisdiction is based upon 28 U.S.C. § 1346(a). The parties agree, except for one fact, which will be dealt with later, that there are no issues as to any material facts.

The facts surrounding this claim for refund are as follows:

During the year 1952, the plaintiffs were partners in the investment firm of Carl M. Loeb Rhoades & Co. (hereinafter "partnership"), a member of the New York and American Stock Exchanges. The principal sources of income of the partnership are from commissions earned on sales of customers' securities, the underwriting and selling of securities and from trading and investing on its own account.

During 1952, the partnership acquired 33 short-term non-interest bearing notes, commonly known as commercial paper. All of the notes were issued at a discount which ranged from 2⅜ to 3¾% on the face value of the notes. The notes were purchased either directly from the issuing obligor corporation or through agents or dealers on the original date of issue. The notes had maturity dates between 190 and 272 days from the date of issue. All of these notes were either sold subsequent to six months after their pur-

chase or were retained, unmatured, at the close of the taxable year 1952.

Plaintiffs reported the distributive share of the profit realized from the sale by the partnership of 20 of the notes during the year 1952 as long-term capital gain. The Internal Revenue Service disallowed capital gain treatment and computed the discount earned per day for each note by dividing the number of days between issuance and maturity into the total discount. The earned discount per day, multiplied by the number of days the notes were held during 1952, either before sale or as of December 31, was considered as "discount earned." The Internal Revenue Service treated the amount of "discount earned" as ordinary income. Deficiencies were assessed against the plaintiffs. The deficiencies were paid, a claim for refund was duly filed, and this action was thereafter commenced.

The parties differ as to the treatment which should be accorded to the original issue discounts. The plaintiffs claim that the amounts so realized are long-term capital gains, while the Internal Revenue Service held them to be interest, therefore, ordinary income. In addition, the plaintiffs urge the Commissioner of Internal Revenue's prior acquiescence in 1944 in the case of Commissioner of Internal Revenue v. Caulkins, 144 F.2d 482 (6 Cir. 1944), affirming 1 T.C. 656 (1943), estops the Internal Revenue Service from now claiming that original issue discounts should be treated as interest since they relied on the Caulkins' acquiescence when they purchased the securities in 1952.

Thus, the issue is squarely before the court: Aside from any consideration of reliance or estoppel, when short-term non-interest bearing notes are purchased at a discount, is the amount of such discount when realized in the nature of interest or a capital gain?

## DISCUSSION

### A. STATUTES INVOLVED

There are two sections of the Internal Revenue Code of 1939 which must be considered in determining this action. They are Sections 22 and 117(a) (1). Section 22 provides:

"§ 22. Gross income

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * "

Section 117(a) (1) provides:

"§ 117. Capital gains and losses

"(a) Definitions. As used in this chapter—

"(1) Capital assets. The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

"(B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), or real property used in his trade or business;

"(C) * * *

"(D) an obligation of the United States or any of its possessions, or

of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interset [sic] at a fixed maturity date not exceeding one year from the date of issue."

## B. DOES THE 1939 CODE ALLOW ORIGINAL ISSUE DISCOUNTS TO BE TREATED AS CAPITAL GAINS?

The plaintiffs rely heavily upon the case of George Peck Caulkins, supra. The Caulkins case involved a taxpayer who paid $15,043.33 over a ten-year period for an accumulative installment certificate which returned him $20,000 at the end of the ten years when the certificate was redeemed. The Tax Court and the Circuit Court of Appeals for the Sixth Circuit held that the difference between the amount paid and the amount received by the taxpayer upon redemption was a long-term capital gain. This result was achieved primarily through a peculiar application of Section 117(f), which provided:

"(f) Retirement of bonds, etc. For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor."

The two courts were of the opinion that $4,956.67 increment received by the taxpayer was a capital gain because Section 117(f) makes the amounts received by the holder on retirement of a certificate or other evidence of indebtedness capital gains. Therefore, on the basis of the Caulkins case, the plaintiffs urge that the increment as a result of an original issue discount on a note sold before maturity would result in a capital gain and not ordinary income.

## C. THE CAULKINS CASE WAS WRONGLY DECIDED.

It is clear that the Courts in the Caulkins case wrongly interpreted the purpose and scope of Section 117(f). The situation which gave rise to the enactment of Section 117(f) is illustrated by the case of Fairbanks v. United States, 306 U.S. 436, 59 S.Ct. 607, 83 L.Ed. 855 (1939). There, the taxpayer acquired bonds at less than par value. The court held that the increment received upon the retirement of the bonds could not be considered as capital gains because the redemption of the bonds was not a "sale or exchange thereof" and the statute defined a capital gain as meaning "taxable gain from the sale or exchange of capital assets." Following the Fairbanks case Section 117(f) was enacted.

It seems plain that Section 117(f) was not designed to accomplish any other purpose but to reverse the type of result achieved in the Fairbanks case. Nowhere in the text of Section 117(f) or in its legislative history is there any indication that if, upon retirement of such bonds, the increment a taxpayer receives would be converted into capital assets or treated as capital gains.

The literal language of Section 117(f) if applied to facts identical to those in the Caulkins case, supra, yields only one conclusion, the increment should be treated as ordinary income. The operative words of Section 117(f) are: "[A]mounts received by the holder upon the retirement * * * shall be considered as amounts in exchange therefor." In a Caulkins-type fact situation, we have a combination of both a capital asset (the note or other evidence of indebtedness) and the interest on other earnings from that asset. The courts in Caulkins failed to realize that the gain realized from the deemed sale of a capital asset which has appreciated in value is capital gain, whereas, gain realized by income from the capital asset is ordinary income. The court, in other words, considered both the capital asset and the increment by way of interest or discount

together and considered the combined amount as a capital gain.

The rationale of the Caulkins case has been repudiated in recent years by other courts which had cases similar to Caulkins. See Commissioner of Internal Revenue v. Morgan, 272 F.2d 936 (9 Cir. 1959); Rosen v. United States, 288 F.2d 658 (3 Cir. 1961); United States v. Harrison, 304 F.2d 835 (5 Cir. 1962), cert. denied 372 U.S. 934, 83 S.Ct. 881, 9 L.Ed.2d 765 (1963); Pattiz v. Commissioner, 311 F.2d 947 (Ct.Cl.1963); Richard B. Gibbons, 37 T.C. 569 (1961); V. David Leavin, 37 T.C. 766 (1962).

THE PLAINTIFFS' CLAIM OF RELIANCE UPON THE CAULKINS ACQUIESCENCE.

The plaintiffs claim that they relied on the Caulkins case and the acquiescence in Caulkins by the Treasury Department when they entered into these transactions in 1952. Since Caulkins has been repudiated by the Commissioner, the plaintiffs contend that to apply this change of position to them would cause them substantial injury.

 The law is clear that the Commissioner of Internal Revenue can retroactively correct a mistake of law even where a taxpayer has relied on the previous determination to his detriment. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528 (1936); Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); 10 Mertens, Law of Federal Income Taxation § 60.16 (Zimet Rev.1958). Therefore, it is clear that plaintiffs' alleged reliance, even if proved, does not estop the Commissioner from applying the correct legal principles in determining the income of the partnership. Therefore, we deem it unnecessary to pass upon this claim of reliance.

 Assuming, arguendo, that the law would allow the claim of reliance, this court cannot agree with the plaintiffs that they have any ground to base their reliance upon the Caulkins decision and the acquiescence by the Commissioner. A thorough examination of the prior Treasury Department rulings demonstrates that the result reached in Caulkins was an exception to the general policy of the Internal Revenue Service to treat amounts received by original issue discount as income. Also, the prior rulings demonstrate that Caulkins is distinguishable from the present claim on the law and on its facts.

In 1940, G.C.M. 21890, 1940-1 Cum. Bull. 85 was issued. There, the Commissioner held that the amount of an original issue discount upon a state obligation was in the nature of deferred interest, therefore, nontaxable income to the taxpayer under Section 22(b) (4) of the Revenue Act of 1938, which provided for the exclusion from gross income and exempted from taxation interest upon state obligations.

In 1941, I.T. 3486, 1941-2 Cum.Bull. 76 was published. It provided that since the Public Debt Act of 1941 provided that the interest upon, and gain from sale or other disposition of, United States Treasury Bills issued on or after March 1, 1941 are no longer tax exempt, the amount of discount " * * * is includible in gross income as interest * * *."

After Caulkins was affirmed by the Sixth Circuit, the Treasury Department acquiesced in its result. (See list of acquiescences in 1944 Cum.Bull.)

In 1953, the Commissioner published Rev.Rul. 119, 1953-2 Cum.Bull. 95. Rev. Ruling 119 provided:

"What included in gross income

"The discount at which a 'Twelve Year Dollar Savings Bond' of the State of Israel is originally issued constitutes interest which is taxable as ordinary income under section 22(a) of the Internal Revenue Code when realized upon redemption; it does not represent an amount received upon retirement of the bond within the meaning of section 117 (f) of the Code.

* * * * * *

"Since about 1920, discount realized on retirement of State and municipal obligations in the hands of the original purchaser has been treated by the Bureau as interest, the theory being that the discount is an amount paid in lieu of interest. * * * The position taken by the Bureau * * * has been consistently maintained with regard to characterizing discount as interest and treating the excess over discount (and ordinary interest, if any) realized upon retirement as taxable income. However, after the enactment of section 117(f) of the Internal Revenue Code, the excess over discount has been consistently taxed as capital gain rather than ordinary gain. (See G.C.M. 21890, C.B.1940–1,85) Therefore, only the excess of the amount realized from a State or municipal bond, less discount from the date of acquisition, and ordinary interest, if any, over the cost or other basis of the bond is the amount received upon retirement taxable as capital gain under section 117(f) of the Code.

* * * * * *

"In the case of Commissioner [of Internal Revenue] v. George Peck Caulkins, [6 Cir.], 144 Fed.(2d) 482, affirming Tax Court decision, 1 T.C. 656, acquiescence, C.B.1944, 5, the Court held that the excess of the amount received by the taxpayer, pursuant to a contract with Investors Syndicate over the aggregate payments made by him for an Accumulative Installment Certificate, constituted capital gain and stated that the certificate in question ' "was an evidence of indebtedness" similar to a bond or debenture and hence falls within the statutory group governed by section 117(f).' This decision should be limited precisely to what was there decided under the particular facts of that case. It would be inappropriate to apply the decision to any other case unless the facts and circumstances conform to those stated in the published decision of the Tax Court in the Caulkins case."

In 1955, Revenue Ruling 55–136, 1955–1 Cum.Bull 213 was published. It provided:

"Section 117(f) of the Internal Revenue Code of 1939 applies only to amounts received by reason of redemption of bonds. It does not apply to the amount of interest (whether paid in the form of discount or not) which is received by reason of holding the bond. Such interest-equivalent payments are taxable as ordinary income under section 22(a) of the Code.

* * * * * *

"It has been the policy of the Internal Revenue Service to restrict the application of the Caulkins case to cases involving the identical facts. This position has been reconsidered in the light of Revenue Ruling 119, supra, i. e., that the amount received upon the redemption of a bond which represents original or initial discount constitutes interest which is taxable as ordinary income. There is no logical basis in fact or in law to distinguish the discount element in the Accumulative Installment Certificate involved in the Caulkins case from the original discount element involved ordinarily in the issuance of any bonds."

It is clear that Caulkins was an exception to the rule that amounts received from original issue discounts were treated as ordinary income. In order for the plaintiffs to rely on Caulkins it is also clear that their claim must fall into the identical exception Caulkins created. Caulkins involved a peculiar application of Section 117(f), Internal Revenue Code of 1939, to redemption of "Accumulative Installment Certificates." Here, Section 117(f) does not apply since we have a sale before maturity and not a redemption. Therefore, the exception created by Caulkins is not precedent for the claim of plaintiffs.

In Midland-Ross Corp. v. United States, 214 F.Supp. 631 (N.D.Ohio 1963), cited by the plaintiffs, the court rejected the distinction between the tax consequences of a sale and that of a redemption. The court stated, 214 F.Supp. at 631: "The combination of the Caulkins case with Section 117(f) thus indicates that appreciation realized on evidences of indebtedness, issued at an original discount and sold before maturity, constituted a capital gain and not regular income. The remaining question, therefore, is whether the legislative, administrative and judicial treatments of discount obligations support this indication." The court concluded " * * * while it is true that the recent cases have adopted the Government's position, they have done so (1) without a discussion of the historical treatment of gains resulting from original issue discount, and (2) only upon a rejection of the Caulkins case, which is controlling in this Circuit."

I cannot agree with the court in Midland-Ross, supra, that the legislative, judicial and administrative treatments support the conclusion that increments by way of original issue discounts on bonds sold before maturity must be treated as capital gains. Moreover, the Caulkins case does not support the court's conclusion for two reasons. First, on its facts it was wrongly decided; second, assuming Caulkins was correct, it provides no precedent for cases concerning the sale before maturity of original issue discount bonds.

In sum, it is clear that (1) Caulkins was wrongly decided; (2) even assuming Caulkins had been correctly decided, it provides no precedent for the plaintiffs; and (3) the plaintiffs cannot estop the government on the basis of the Caulkins acquiescence.

 The plaintiffs' claim for refund is narrowed to a single question: What is the tax treatment accorded to increments received from short-term, non-interest bearing notes issued at a discount? The answer is clear; that portion of any profit realized upon a subsequent sale of the notes which is attributable to the discount as well as any discount earned upon unsold notes is taxable as ordinary income and not capital gain.

 Substance, reality and total effect of a particular transaction will determine the tax consequences thereof. Commissioner of Internal Revenue v. P. G. Lake Inc., 356 U.S. 260, 266, 78 S.Ct. 691, 2 L.Ed.2d 743 (1957). The forms or method of accounting for a transaction do not control, since "Their essence is determined not by subtleties of draftsmanship but by their total effect. See Helvering v. Clifford, 309 U.S. 331, [60 S.Ct. 554, 84 L.Ed. 788]; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055." 356 U.S. at 266–267, 78 S.Ct. at 695. In other words: "The law is not to be hoodwinked by colorable pretences. It looks at truth and reality, through whatever disguise it may assume." Commonwealth v. Hunt, 45 Mass. 111, 129 (1842).

 The "total effect" of the transactions which the partnership entered into makes it clear that the partnership earned interest, ordinary income, as a result of these discounts. The term "interest," as contained in the "gross income" definition contained in Section 22(a), Int.Rev.Code of 1939, is defined as the amount which one has contracted to pay for the use of borrowed money. Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 213, 76 L.Ed. 484 (1932); Commissioner of Internal Revenue v. Morgan, 272 F.2d 936, 939 (9 Cir. 1939); Jaglom v. Commissioner, 303 F.2d 847, 850 (2 Cir. 1962). Although it is true that there may be some valid distinctions between interest and discounts, these distinctions are of little significance. A discount is in the nature of deferred interest which may be amortized, for income tax purposes, over the life of the bonds. The Internal Revenue Service in computing the plaintiffs' tax liability did properly accrue their interest ratably

over the period it was earned. 2 Mertens, Law of Federal Income Taxation, § 12.95, p. 276 (Zimet Rev.1958); Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 52 S.Ct. 529, 76 L. Ed. 1111 (1932); United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L. Ed. 347 (1926).

■ The plaintiffs contend that the enactment of Section 1232, Int.Rev.Code of 1954, which treats increments from discounts as ordinary income, did effect a change in the laws governing the tax treatment of original issue discounts. This contention is without merit. As stated in Commissioner of Internal Revenue v. Morgan, 272 F.2d 936, 941 (9 Cir. 1959):

" * * * Respondents argue that by making this new provision for bonds issued in the future, Congress recognized that it effected a change, and thereby recognized that the law previously was settled by the Caulkins decision. We think not. The Senate Report which accompanied the legislation, (S.Rep.No. 1622, 83d Cong., 2d Sess. p. 112; 3 U.S.C. Cong. & Adm. News, 1954, 4621, 4745), noted that there was 'some uncertainty as to the status of proceeds in these transactions. * * * The House bill removes doubt in this area.' We find here no evidence that the new enactment did any more than that."

The plaintiffs also contend that even if the original issue discount is taxable as ordinary income, the Internal Revenue Service erroneously accrued the income from the notes not sold by the partnership during the taxable year 1952. While the plaintiffs concede the partnership was on the accrual basis, they assert that the notes were really individual investments of the taxpayers and not the property of the partnership and, hence, interest may not be accrued since the partner taxpayers were on the cash basis. The taxpayers state that there is an issue of fact as to the method of accounting utilized in these investments since they state they used a cash rather than accrual basis. Therefore, they contend that none of the proceeds from the notes that were not sold or redeemed in 1952 should be included in the computation of the 1952 income of the partners.

■ The claim for refund as well as the complaint filed herein (paragraph 17(e) and (f)) allege that the securities were partnership property. There is no doubt that the partnership tax return was computed on the accrual basis in 1952. Therefore, the unsupported allegation in plaintiffs' statement pursuant to Rule 9(g) of the General Rules of the United States District Court for the Southern District of New York to the effect there remains a genuine issue of fact as to the method of accounting will not prevent the grant of complete summary judgment to the government. As Rule 56, Fed.R.Civ.P. makes clear: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." This the plaintiffs have not done. Since this is a refund action the plaintiffs must not only demonstrate that the Commissioner's method of computation is wrong but also must establish the actual and precise method of computation which should have been utilized. Taylor v. Commissioner, 70 F.2d 619, 620–621, (2 Cir.), aff'd 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Alvary v. United States, 302 F.2d 790 (2 Cir. 1962).

Accordingly, the plaintiff's motion for summary judgment is denied and the defendant's motion for summary judgment is granted with costs.

Settle judgment on notice.